IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| IOWA PRIMATE LEARNING SANCTUARY d/b/a GREAT APE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ZOOLOGICAL FOUNDATION OF GEORGIA, INC. d/b/a ZOO ATLANTA, DEMOCRATIC REPUBLIC OF CONGO, JAPAN MONKEY CENTRE INSTITUTE AND MUSEUM OF PRIMATOLOGY, and SUE SAVAGE-RUMBAUGH, Ph. D.,<br><br>Defendants. | Case No. 10-52<br><br><br>COMPLAINT FOR INTERPLEADER |

COMES NOW the Plaintiff, Iowa Primate Learning Sanctuary d/b/a Great Ape Trust ("Great Ape Trust"), by and through its undersigned counsel, and pursuant to 28 U.S.C. § 1335, and in support of its Complaint for Interpleader, hereby states as follows:

## I. NATURE OF ACTION, JURISDICTION, AND VENUE

1.  This action for statutory interpleader is brought pursuant to 28 U.S.C. §1335 in order to resolve the ownership rights to two bonobos (*pan paniscus*), individually, the first being a 40 year old female named Matata; the second a 9 year old male named Maisha who is the son of Matata (collectively referred to from time to time as "the bonobos") and both currently in the possession of the Great Ape Trust.

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1335 as parties with claims of ownership include residents of Iowa, Georgia, Japan and a foreign nation - the Democratic Republic of the Congo.

3. Venue is proper in the Southern District of Iowa pursuant to 28 U.S.C. § 1397, as a resident of this judicial district claims ownership of Maisha and the bonobos are located in this District and are currently in the possession of the Great Ape Trust.

4. The value of the bonobos exceeds the jurisdictional amount of $500.

5. The Great Ape Trust is prepared to post a bond, in an amount deemed appropriate by the Court, to secure the Great Ape Trust's compliance with the judgment and any order of the Court concerning the ownership of the bonobos.

## II. THE PARTIES

6. The Great Ape Trust is a non-profit corporation incorporated under the laws of Iowa, having its principal place of business in Iowa.

7. Defendant Zoological Foundation of Georgia, Inc. ("Zoo Atlanta") is a non-profit corporation incorporated under the laws of Georgia, having its principal place of business in Georgia.

8. Defendant Democratic Republic of Congo ("DRC") is a foreign sovereign nation.

9. Defendant Japan Monkey Centre Institute and Museum of Primatology ("JMC") is an entity organized and operating under the laws of Japan.

10. Sue Savage-Rumbaugh, Ph.D. ("Dr. Savage-Rumbaugh") is a citizen of Iowa.

## III. STATEMENT OF FACTS

*Matata*

11. On or about October 15, 1974, the Institute of Scientific Research in Central Africa, a Division within the Bureau of the President of the Republic of Zaire (now the DRC) entered into a statement of understanding with the Yerkes Center for Primatological Research of

Emory University ("Yerkes") concerning the "Pan Paniscus Project" and contemplating the capture and delivery to Yerkes of "2 couples". (See Exhibit A.)

12. It is understood that in 1975, three adult bonobos, each a captured individual born in the wild and one of whom was Matata, along with two infant bonobos were lawfully exported to the United States under the auspices of the National Academy of Sciences, in connection with the Pan Paniscus project. Upon their arrival, these bonobos were delivered to Yerkes and began working with scientists there, including Dr. Savage Rumbaugh.

13. In approximately 1996, control of the bonobo research facility at Yerkes, which had been operated jointly by Emory University and Georgia State University, was transferred in whole to the Language Research Center at Georgia State University ("GSU"). On or about February 2, 1996, Emory transferred ownership of three bonobos (not subject to this action) to GSU. Matata continued to reside with the bonobo colony at GSU, which included her offspring Elikya (born June 28, 1997). (See Exhibit B.)

14. On or about April 25, 2000, Yerkes entered into an agreement with Zoo Atlanta purporting to "donate . . . one (1) Bonobo", namely Matata, to Zoo Atlanta and providing that Zoo Atlanta would provide, at its sole expense, all care, feeding and housing for Matata. (See Exhibit C.)

15. After the April 25, 2000 agreement, Matata continued to live at GSU

*Maisha*

16. On or about February 15, 1995, the JMC entered into a breeding loan agreement with Yerkes concerning the breeding of "P-Suke" (pronounced *peace-kay*), a bonobo owned by JMC, with a Yerkes-owned individual named "Panbanisha". The agreement provided for the

ownership of offspring between P-Suke and "any other Yerkes-owned female" on an alternating basis with the first going to Yerkes and the second to JMC. (See Exhibit D.)

17. On or about October 20, 1999, JMC transferred ownership of P-Suke and another bonobo named "Nyota" (not a subject of this action) to Dr. Savage Rumbaugh, by written agreement which provided that JMC would have the option to 2 bonobos, selected by Dr. Savage Rumbaugh, that are the offspring of P-Suke (other than with Panbanisha) or Nyota. (See Exhibit E.)

18. On May 28, 2000 Matata gave birth to Maisha.

19. The sire of both Elikya and Maisha is P-Suke.

20. On or about July 2, 2001, Zoo Atlanta entered into a breeding agreement with GSU and Dr. Savage Rumbaugh concerning the breeding of offspring from Matata and P-Suke, which agreement provided for the ownership of offspring on an alternating basis, the first going to Zoo Atlanta the second to GSU and Dr. Savage Rumbaugh. (See Exhibit F.)

*Great Ape Trust*

21. On or about February 13, 2004, Dr. Savage Rumbaugh transferred, by written agreement, "all ownership interests" in the bonobos held at GSU to the Great Ape Trust. (See Exhibit G.)

22. On or about April 1, 2004, GSU transferred, by written agreement, "all ownership interests" in the bonobos held at GSU to the Great Ape Trust. (See Exhibit H.)

23. On or about May 19, 2004, Zoo Atlanta entered into two agreements with GSU: the first purporting to lend Matata for breeding purposes (See Exhibit I); the second purporting to lend Maisha for breeding purposes. (See Exhibit J).

24. On or about July 8, 2004, Zoo Atlanta entered into two agreements with Great Ape Trust: the first purporting to lend Matata for breeding purposes (See Exhibit K); the second purporting to lend Maisha for breeding purposes (See Exhibit L).

25. On or about March 19, 2009, Mwanza Ndunda, the Head of Research at the Center for Forestry and Ecology in the DRC wrote to the Great Ape Trust a letter stating that Matata remains the exclusive property of the Congolese government. (See Exhibit M.)

26. On or about December 9, 2009, Dennis Kelly as the President & CEO of Zoo Atlanta wrote to the Great Ape Trust a letter purporting to terminate the July 8, 2009 lending agreements and directing delivery of Matata and Maisha to the Milwaukee Zoo. (See Exhibit N)

27. Through counsel, Dr. Savage Rumbaugh has asserted to the Great Ape Trust an ownership interest in Maisha as the offspring of P-Suke.

28. Great Ape Trust has further been advised that JMC may have a legal claim to Maisha as the offspring of P-Suke under either its agreement with Yerkes or its agreement with Dr. Savage Rumbaugh.

29. The Great Ape Trust, as the assignee of Dr. Savage Rumbaugh and GSU asserts an ownership interest in Maisha.

30. The welfare of the bonobos would be best served by maintenance of their current residence at the Great Ape Trust and continued participation in ongoing federally funded, internationally recognized research projects pending resolution of the competing ownership claims.

## COUNT I - INTERPLEADER

31. The Trust incorporates paragraphs 1-30 herein the same as though pleaded in full.

32.     Given the multiple claims of ownership of Matata and Maisha, and, to the knowledge and belief of the Great Ape Trust, the claimants' diverse views regarding where the bonobos should reside, the Great Ape Trust seeks resolution of the competing ownership claims so as to ensure that the rightful owner or owners of Matata and Maisha determine whether they should be removed from the Great Ape Trust, and if so, to what location and at what time.

WHEREFORE the Great Ape Trust prays the defendants be required to interplead and that the court set a hearing to address and enter an order regarding the appropriate bond required under 28 U.S.C. §1335; determine and enter judgment regarding the ownership interests in Maisha and Matata; and for such further relief as the court deems equitable in the premises.

## COUNT II - INJUNCTION

33.     The Great Ape Trust incorporates paragraphs 1-32 herein the same as though pleaded in full.

34.     In order to avoid duplicative litigation concerning Matata and Maisha, and potentially conflicting results, the court should pursuant to 28 U.S.C. §2361, enter an order restraining Defendants from instituting or prosecuting any proceeding in any State or United States court affecting the bonobos involved in this interpleader action until further order of this court.

WHEREFORE the Great Ape Trust prays that the Court enter an injunction restraining each of the Defendants from instituting any action against the Great Ape Trust asserting an ownership interest in, or requesting relocation of, either Matata or Maisha during the pendency of this matter.

Respectfully Submitted,

WHITFIELD & EDDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA 503090-4195
Telephone:     (515) 288-6041
Facsimile:     (515) 246-1474
samuelson@whitfieldlaw.com
stanfield@whitfieldlaw.com

By:_____/s/_____
Jaki K. Samuelson                    AT0006940


By:_____/s/_____
B. MacPaul Stanfield                 AT0007422



ATTORNEYS FOR PLAINTIFF