IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| IOWA PRIMATE LEARNING SANCTUARY d/b/a GREAT APE TRUST, | ) ) ) | Case No. 10-52 |
| Plaintiff, | ) ) | |
| v. | ) ) | ANSWER BY ZOOLOGICAL FOUNDATION OF GEORGIA, |
| ZOOLOGICAL FOUNDATION OF GEORGIA, INC. d/b/a ZOO ATLANTA, DEMOCRATIC REPUBLIC OF CONGO, JAPAN MONKEY CENTRE INSTITUTE AND MUSEUM OF PRIMATOLOGY, and SUE SAVAGE-RUMBAUGH, Ph. D., | ) ) ) ) ) ) ) | INC., d/b/a ZOO ATLANTA |
| Defendants. | ) ) | |

Defendant Zoological Foundation of Georgia, Inc., d/b/a Zoo Atlanta ("Zoo Atlanta"), answers Plaintiff's petition as follows:

1.  Zoo Atlanta admits that Plaintiff has purported in its Complaint for Interpleader to commence an action under 28 U.S.C. §1335 for interpleader in a purported effort to determine the owner of two bonobos, Matata and Maisha. Zoo Atlanta admits that Matata is approximately 40 years old and that Maisha is her son and is nine years old. Zoo Atlanta admits that the entity known as the Great Ape Trust (GAT) currently has possession of Matata and Maisha pursuant to loan agreements between Zoo Atlanta and GAT, which Zoo Atlanta has terminated. Zoo Atlanta denies all other allegations of paragraph 1. Zoo Atlanta expressly denies that the GAT has any lawful right to possess Matata or Maisha. Zoo Atlanta is the lawful owner of Matata and Maisha, has terminated its loan of Matata and Maisha to the GAT, and has demanded that GAT relinquish possession of Matata and Maisha.

2. Zoo Atlanta admits the allegations of paragraph 2 as to Zoo Atlanta, and denies for lack of information all other allegations of paragraph 2.

3. Zoo Atlanta admits that venue is proper in the Southern District of Iowa pursuant to 28 U.S.C. §1397 because Matata and Maisha currently are in the State of Iowa and because GAT, which unlawfully possesses them and refuses to release them to Zoo Atlanta, does business in the Southern District of Iowa. Zoo Atlanta denies all other allegations of paragraph 3. Zoo Atlanta expressly denies that the GAT has any lawful right to possess Matata or Maisha.

4. Zoo Atlanta admits the allegations of paragraph 4. Matata and Maisha are, in fact, priceless, because they are irreplaceable.

5. Zoo Atlanta denies the allegations of paragraph 5.

6. Zoo Atlanta admits that GAT purports to be a not-for-profit corporation, organized under the laws of Iowa and with its principal place of business in Des Moines. Zoo Atlanta denies for lack of information all other allegations of paragraph 6.

7. Zoo Atlanta admits the allegations of paragraph 7.

8. Zoo Atlanta admits the allegations of paragraph 8.

9. Zoo Atlanta denies for lack of information the allegations of paragraph 9.

10. Zoo Atlanta denies for lack of information the allegations of paragraph 10.

11. Zoo Atlanta admits that GAT has attached to its complaint as Exhibit A what purports to be an English translation of a French language document that GAT purports to be a "statement of understanding" dated October 15, 1974, between an entity within the Republic of Zaire and the Yerkes Center for Primatological Research (Yerkes), which was then part of Emory University in Atlanta, Georgia. Zoo Atlanta denies all other allegations of paragraph 11.

Zoo Atlanta expressly denies for lack of information the allegation implicit in paragraph 11 that the English translation in Exhibit A is accurate.

12. Zoo Atlanta admits that, on or about March 27, 1975, Yerkes came into possession of a female bonobo named Matata. Zoo Atlanta admits that Yerkes understood, believed, and recorded that Matata had been born and captured in the wild. Zoo Atlanta admits that Yerkes estimated Matata's year of birth to be 1970. Zoo Atlanta admits that Yerkes eventually received Matata as a donation from the Republic of Zaire. Zoo Atlanta denies all other allegations of paragraph 12.

13. Zoo Atlanta admits that Exhibit B as attached to GAT's complaint purports to be a cover letter dated February 6, 1996, and an agreement dated February 2, 1996, between Emory University (Emory) and Georgia State University Research Foundation (Georgia State). Zoo Atlanta admits that Exhibit B does not relate at all to Matata and that Yerkes/Emory continued to be the lawful owner of Matata. Zoo Atlanta denies all other allegations of paragraph 13.

14. Zoo Atlanta admits Exhibit C as attached to GAT's complaint is an agreement dated April 25, 2000, in which Yerkes/Emory transfers ownership of Matata to Zoo Atlanta. Zoo Atlanta admits that it agreed that Zoo Atlanta, "or its designees," would provide all care, feeding, and housing for Matata "at their expense." Zoo Atlanta denies all other allegations of paragraph 14.

15. Zoo Atlanta admits that Matata lived at Georgia State from May 4, 2000, until Zoo Atlanta loaned her to GAT in 2004. Zoo Atlanta denies all other allegations of paragraph 15.

16. Zoo Atlanta admits that Exhibit D as attached to GAT's complaint purports to be an agreement dated February and March 1995 and among Yerkes, Georgia State, and an entity

named Japan Monkey Center (JMC), by which JMC loaned to Yerkes and Georgia State a male bonobo named P-Suke for purposes of breeding with a female bonobo named Panbanisha (not Matata).  Zoo Atlanta admits that the parties to that the agreement purportedly agreed that, if any other "Yerkes-owned female" produced an offspring with P-Suke, the first such offspring would "belong" to Yerkes.  Zoo Atlanta denies all other allegations of paragraph 16.

17. Zoo Atlanta admits that Exhibit E as attached to GAT's complaint purports to be an agreement dated October 20, 1999, between JMC and defendant Sue Savage-Rumbaugh, by which JMC purported to transfer ownership of P-Suke to Savage-Rumbaugh in return for the right to acquire from Savage-Rumbaugh any two bonobos that are the offspring of P-Suke and any bonobo other than Panbanisha.  Zoo Atlanta denies all other allegations of paragraph 17.

18. Zoo Atlanta admits that Matata gave birth to Maisha on or about May 28, 2000.  Zoo Atlanta denies all other allegations of paragraph 18.

19. Zoo Atlanta admits that Matata and P-Suke are the parents of Maisha.  Zoo Atlanta denies all other allegations of paragraph 19.

20. Zoo Atlanta admits that Exhibit F as attached to GAT's complaint is an loan/breeding agreement dated July 2, 2001, between and among Zoo Atlanta, Savage-Rumbaugh, and Georgia State.  Zoo Atlanta admits that the agreement constituted a loan for breeding purposes of Matata to Georgia State.  Zoo Atlanta admits that the agreement provides for the determination of ownership of offspring born to Matata after the effective date of the agreement and pursuant to the breeding loan.  Zoo Atlanta admits that the effective date of the agreement is after the birth of Maisha and therefore of no relevance to the ownership of Maisha.  Zoo Atlanta denies all other allegations of paragraph 20.

21.     Zoo Atlanta admits that Exhibit G as attached to GAT's complaint purports to be an agreement dated February 13, 2004, between GAT and Savage-Rumbaugh, whereby Savage-Rumbaugh purports to represent that she "may be in a position to assert ownership interests in some of the bonobos currently residing at [Georgia State]," and whereby she agrees to transfer to GAT "any and all ownership interests she may possess with respect to any of the bonobos residing at [Yerkes]." Zoo Atlanta denies all other allegations of paragraph 21. Zoo Atlanta expressly denies that Savage-Rumbaugh could transfer to GAT any ownership interest in Matata or Maisha, since she had none.

22.     Zoo Atlanta admits that Exhibit H as attached to GAT's complaint purports to be an agreement dated April 1, 2004, between GAT and Georgia State, whereby Georgia State claims to have "ownership interests in some of the bonobos currently residing at [Yerkes]," and whereby Georgia State agrees "to donate to [GAT] any and all ownership interests they may possess regarding the bonobos residing at [Yerkes], with particular emphasis on ownership interests they may possess with respect to [six named bonobos other than Matata and Maisha]." Zoo Atlanta denies all other allegations of paragraph 22. Zoo Atlanta expressly denies that Georgia State could transfer to GAT any ownership interests in Matata or Maisha, since it had none.

23.     Zoo Atlanta admits that Exhibits I and J as attached to GAT's complaint respectively constitute lending/breeding agreements dated May 19, 2004, between Zoo Atlanta and Georgia State whereby Zoo Atlanta loaned to Georgia State Matata (Exhibit I) and Maisha (Exhibit J). Zoo Atlanta denies all other allegations of paragraph 23.

24.     Zoo Atlanta admits that Exhibits K and L as attached to GAT's complaint respectively constitute lending/breeding agreements dated June 16, 2004, between Zoo Atlanta

and GAT whereby Zoo Atlanta loaned to GAT Matata [Exhibit K] and Maisha [Exhibit L]. Zoo Atlanta denies all other allegations of paragraph 24.

25. Zoo Atlanta admits that Exhibit M as attached to GAT's complaint purports to be an English translation of a French language document that GAT purports to be a letter from Mwanza Ndunda of the Democratic Republic of Congo to GAT on the ownership of Matata. Zoo Atlanta denies all other allegations of paragraph 25. Zoo Atlanta expressly denies for lack of information the allegation implicit in paragraph 25 that the English translation in Exhibit M is accurate. Zoo Atlanta expressly denies that the Democratic Republic of Congo has any ownership interest in Matata.

26. Zoo Atlanta admits that Exhibit N as attached to GAT's complaint constitutes a letter dated December 9, 2009, from Dennis Kelly as President and CEO of Zoo Atlanta to GAT, in which Zoo Atlanta terminated the agreements attached as Exhibits K and L. Zoo Atlanta denies all other allegations of paragraph 26.

27. Zoo Atlanta denies for lack of information the allegations of paragraph 27. Savage-Rumbaugh has no ownership interest in Maisha.

28. Zoo Atlanta denies for lack of information the allegations of paragraph 28. JMC has no ownership interest in Maisha.

29. Zoo Atlanta admits that GAT is asserting in paragraph 29 an ownership interest. Zoo Atlanta denies all other allegations of paragraph 29. Zoo Atlanta expressly denies that GAT has any ownership interest in Maisha.

30. Zoo Atlanta denies the allegations of paragraph 30.

31. Zoo Atlanta incorporates its answers to paragraphs 1-30.

32. Zoo Atlanta denies the allegations of paragraph 32.

33. Zoo Atlanta incorporates its answers to paragraphs 1-32.

34. Zoo Atlanta denies the allegations of paragraph 34.

**PRAYER**

For these reasons, Defendant Zoological Foundation of Georgia, Inc., d/b/a Zoo Atlanta asks the Court to determine that Zoo Atlanta is the lawful owner of Matata and Maisha, that Zoo Atlanta has lawfully and effectively terminated its loans of Matata and Maisha to GAT, that GAT must relinquish possession of Matata and Maisha pursuant to Zoo Atlanta's demands for same, and to enter all other orders and judgments that are necessary to the transfer of possession of Matata and Maisha to Zoo Atlanta or its designee.

/s/ Gregory M. Lederer
Gregory M. Lederer, AT0004668
LEDERER WESTON CRAIG PLC
118 Third Avenue SE, Suite 700
P.O. Box 1927
Cedar Rapids, IA  52406-1927
Phone: 319-365-1184
Facsimile: 319-365-1186
E-Mail: glederer@lwclawyers.com

*Attorney for Defendant Zoological Foundation of Georgia, Inc. d/b/a Zoo Atlanta*

**CERTIFICATE OF SERVICE**

   I hereby certify that on March 16, 2010, I electronically filed the foregoing document with the Clerk of Court using the ECF system which sends a copy of the foregoing to:

Jaki K. Samuelson
B. MacPaul Stanfield
Whitfield & Eddy, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA 50309-4195
*Attorney for Plaintiff*

                 /s/Gregory M. Lederer
                 GREGORY M. LEDERER