IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| IOWA PRIMATE LEARNING SANCTUARY d/b/a GREAT APE TRUST, <br><br> Plaintiff, <br><br> v. <br><br> ZOOLOGICAL FOUNDATION OF GEORGIA, INC. d/b/a ZOO ATLANTA, DEMOCRATIC REPUBLIC OF CONGO, JAPAN MONKEY CENTRE INSTITUTE AND MUSEUM OF PRIMATOLOGY, and SUE SAVAGE-RUMBAUGH, Ph. D., <br><br> Defendants. | Case No. 10-52 <br><br> DEFENDANT ZOOLOGICAL FOUNDATION OF GEORGIA, INC. d/b/a ZOO ATLANTA'S APPLICATION FOR APPOINTMENT OF RECEIVER |

Defendant Zoological Foundation of Georgia, Inc., d/b/a Zoo Atlanta ("Zoo Atlanta"), pursuant to F.R.Civ.P. 66, provides the following Application for Appointment for Receiver and in support of the same, states as follows:

1. Plaintiff filed the above-referenced interpleader action on February 9, 2010.

2. Zoo Atlanta filed their Answer on or about March 16, 2010.

3. To date, no Answers have been filed on behalf of the remaining defendants, Democratic Republic of Congo; Japan Monkey Centre Institute and Museum of Primatology; and Sue Savage-Rumbaugh, Ph.D.

4. Furthermore, Zoo Atlanta does not know the current status of service of process of the above-referenced Complaint on any of the other co-Defendants.

5. In the interim, the property involved in this litigation involves two priceless bonobos (Matata, a founder female, and Maisha, a male offspring of Matata). This interpleader action involves their ownership rights. The bonobos currently reside at the Great Ape Trust (GAT) in Des Moines, Polk County, Iowa, and have been there by virtue of a loan agreement with Zoo Atlanta since 2004.

6. Zoo Atlanta is the lawful owner of Matata and Maisha.

7. Zoo Atlanta has terminated its loan agreement of Matata and Maisha with the GAT, and has demanded that GAT relinquish its unlawful possession of Matata and Maisha.

8. As a result of the facts surrounding this interpleader action, the appointment of a receiver is necessary for the preservation and protection of the above-named bonobos, especially during the pendency of this proceeding.

9. The federal courts have long considered cases whereby the appointment of a receiver is necessary to preserve property, pending a final determination of its disposition. *Haase v. Chapman*, 308 F. Supp. 399, 404 (W.D. Mo. 1969). "A receiver is a person appointed by the Court to take into [his] custody the control and management of the property or funds of another, pending judicial action concerning them." *Dobler v. Bawden*, 25 N.W.2d 866 (Iowa 1947).

10. Furthermore, the Iowa state courts have conferred such power upon the Court to make such appointments. "On the petition of either party to a civil action or proceeding, wherein [he] shows that [he] has a probable right to or interest in, any property which is the subject of the controversy, and that such property, or its rents or profits, are in danger of being lost or materially injured or impaired, and on such notice to the adverse party as the court or judge shall prescribe . . . if satisfied that the interests of one or both parties will be thereby promoted, and the

substantial rights of neither unduly infringed, may appoint a receiver to take charge of and control such property under its direction during the pendency of the action, and may order and coerce the delivery of it to [him]." *Korf v. Howerton et. al.*, 205 N.W.323, (Iowa 1925).

11. In federal court, an application for the appointment of a receiver should be granted only under extraordinary circumstances. *Kelleam v. Maryland Casualty Co. of Baltimore*, 312 U.S. 377 (1941). This case presents such extraordinary circumstances.

12. The Eighth Circuit has considered the situation necessary to warrant the appointment of a receiver. "Although there is no precise formula for determining when a receiver may be appointed, [six] factors typically warranting appointment are: 1) a valid claim by the party seeking the appointment; 2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; 3) imminent danger that property will be concealed, lost, or diminished in value; 4) inadequacy of legal remedies; 5) lack of a less drastic equitable remedy; 6) and likelihood that appointing the receiver will do more good than harm. *Aviation Supply Corp. v. Barber*, 999 F. 2d 314, 316 (8th Cir. 1993).

13. The Courts have wide discretion in deciding whether to appoint a receiver. *Id.* at 317.

14. Zoo Atlanta is the lawful owner of Matata and Maisha. Zoo Atlanta expressly denies that GAT has any lawful right to possess Matata or Maisha. Zoo Atlanta admits that the Democratic Republic of Congo, Japan Monkey Centre and Sue Savage-Rumbaugh may claim some ownership interest in the bonobos. However, as of today's date, such claims have not been asserted. These factors all weigh in favor of the appointment of a receiver.

15. Without having direct control or management over the bonobos, Zoo Atlanta cannot protect their animals. To date, founder female bonobo Matata, has already experienced

one pregnancy while residing at the GAT. Such pregnancy was contrary to Zoo Atlanta's non-breeding recommendations for Matata. Additional fraudulent conduct may occur as neither Matata or Maisha have appropriate mates at GAT. Any breeding with Maisha would result in close inbreeding. Furthermore, GAT currently utilizes no birth control for any of its female bonobos.

16. Third, these bonobos are priceless. To keep the bonobos in a facility which has lost its accreditation with the Association of Zoos and Aquariums (which happened to GAT in September of 2009), poses imminent danger to the bonobos and to the public as their value and potential importance will diminish.

17. Fourth, there is no other legal remedy for protecting the bonobos. Some type of management and protection is needed.

18. Fifth, no less drastic equitable remedy will protect and preserve the bonobos.

19. Sixth, the appointment of a receiver, and in this case, the Milwaukee County Zoo as receiver, will do more good for the bonobos than harm. For over a year, GAT and Zoo Atlanta discussed the coordination and transfer of the bonobos to the Milwaukee County Zoo for temporary placement. The Milwaukee County Zoo is accredited by the Association of Zoos and Aquariums and is ready, willing, and able to provide temporary placement for the bonobos. (*See* Exhibit A, Affidavit of Charles Wikenhauser, Zoo Director for Milwaukee County Zoo; Exhibit B, Affidavit of Gay Reinartz, Ph.D; and Exhibit C, Affidavit of Lorraine Perkins, Zoo Atlanta).

20. The extraordinary circumstances in this case warrant the appointment of a receiver for the protection and preservation of the bonobos and promulgation of the species. Zoo Atlanta has a valid claim to seek the appointment of a receiver in this matter.

WHEREFORE, Defendant Zoo Atlanta, respectfully requests the Court immediately appoint the Milwaukee County Zoo in Milwaukee, Wisconsin as the temporary receiver for bonobos, Matata and Maisha, and for such other and further relief as the Court deems just and proper.

/s/ Kimberly K. Hardeman
Gregory M. Lederer, AT0004668
Kimberly K. Hardeman, AT0003230
LEDERER WESTON CRAIG PLC
118 Third Avenue SE, Suite 700
P.O. Box 1927
Cedar Rapids, IA 52406-1927
Phone: 319-365-1184
Facsimile: 319-365-1186
E-Mail: glederer@lwclawyers.com

*Attorney for Defendant Zoological Foundation of Georgia, Inc. d/b/a Zoo Atlanta*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2010, I electronically filed the foregoing document with the Clerk of Court using the ECF system which sends a copy of the foregoing to:

Jaki K. Samuelson
B. MacPaul Stanfield
Whitfield & Eddy, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA 50309-4195
*Attorney for Plaintiff*

/s/ Kimberly K. Hardeman
KIMBERLY K. HARDEMAN