IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| IOWA PRIMATE LEARNING SANCTUARY d/b/a GREAT APE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ZOOLOGICAL FOUNDATION OF GEORGIA, INC d/b/a ZOO ATLANTA, DEMOCRATIC REPUBLIC OF CONGO, JAPAN MONKEY CENTER INSTITUTE AND MUSEUM OF PRIMATOLOGY, and SUE SAVAGE-RUMBAUGH, Ph. D.,<br><br>Defendants. | Case No. 4:10-cv-00052<br><br>PLAINTIFF'S RESISTANCE TO ZOO ATLANTA'S APPLICATION FOR APPOINTMENT OF RECEIVER<br>**ORAL ARGUMENT REQUESTED** |

COMES NOW the Plaintiff, Iowa Primate Learning Sanctuary d/b/a Great Ape Trust ("Trust"), and for its Resistance to Zoo Atlanta's Application for Appointment of Receiver, respectfully states as follows:

1. On or about February 5, 2010, the Trust filed a Complaint for Interpleader, asking that the Court resolve competing ownership claims to two bonobos, Matata and Maisha, who reside at the Great Ape Trust.

2. All Defendants have been served with process, including the Democratic Republic of the Congo ("DRC"), served pursuant to the Foreign Sovereign Immunities Act on or about May 20, 2010, and the Japanese Monkey Centre Institute and Museum of Primatology, served pursuant to the Hague Convention on or about June 28, 2010.

3. It is the understanding and belief of the Trust that at least two defendants, Savage-Rumbaugh and DRC, intend to appear and answer, as well as resist Zoo Atlanta's request for

appointment of a receiver. *See* Ex. A ¶ 2; *see also* Ex. E.  Dr. Savage Rumbaugh requested, and the Trust agreed to, additional time to secure local counsel and file her Answer to the Complaint.

4. Zoo Atlanta's Application seeks appointment of the Milwaukee County Zoo ("Milwaukee Zoo") as a receiver for Matata and Maisha and for Matata and Maisha to be moved to the Milwaukee Zoo during litigation of this interpleader action.

5. Pursuant to Federal Rule of Civil Procedure 66, the federal district court can appoint a receiver in "accord with the historical practice in federal courts or with a local rule." "The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993).  "A receiver is an extraordinary equitable remedy that is only justified in extreme situations." *Id*.

6. Contrary to Zoo Atlanta's allegations, this case does not present an "extreme situation" that requires the Court to appoint a receiver.

7. Although there is no precise formula for determining when a receiver may be appointed, factors typically warranting appointment are 1) a valid claim by a party seeking the appointment; 2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; 3) imminent danger that property will be concealed, lost or diminished in value; 4) inadequacy of legal remedies; 5) lack of less drastic equitable remedy; and 6) likelihood that appointing the receiver will do more good than harm. *See id.* at 316-317. (citations omitted).

8. Zoo Atlanta's claim, in paragraph 6 of its Application, that it owns Matata and Maisha is strongly disputed.  The competing claims to ownership of Matata and Maisha are the essence of this interpleader action.  While Zoo Atlanta has advised the Trust that it wishes to terminate a purported loan agreement with the Trust, the validity of that loan Agreement is in

question. The DRC claims to be the rightful owner of Matata and that the entity that purportedly donated Matata to Zoo Atlanta – Yerkes Center for Primatological Research ("Yerkes") did not own Matata and had no authority (See Complaint and Exhibits thereto) to convey ownership of Matata to Zoo Atlanta. *See* Complaint Exs. A, M; Ex. A ¶ 2, 4-6; *see also* Ex. E. Zoo Atlanta, the Japanese Monkey Centre, Dr. Sue Savage Rumbaugh (who has conveyed her interests to the Trust), and, perhaps the DRC have competing claims of ownership with respect to Matata's offspring, Maisha.

9. In connection with its termination of the purported Loan Agreement, Zoo Atlanta requested that the Trust transfer Matata and Maisha to the custody of the same party that it now seeks to have appointed as receiver – the Milwaukee Zoo.

10. In paragraph 15 of the Application, Zoo Atlanta claims that an accidental pregnancy of Matata, that ended in a miscarriage, is "fraudulent" conduct that compels removal of Matata from the Trust in order to avoid future pregnancies. An accidental pregnancy is hardly "fraudulent" conduct. There is no evidence whatsoever of fraudulent conduct by the Trust. Furthermore, the Trust, believes that at Matata's advanced age, Matata should not become pregnant at all, and has procedures in place to prevent her from breeding.[1] *See* Ex. D ¶ 15; *see also* Ex. B ¶ 20-21.

11. Contrary to Zoo Atlanta's allegation in paragraph 16 of its Application, the Trust did not "lose" its American Zoos and Aquariums Association ("AZA") accreditation. The Trust voluntarily, and without any request by AZA that it do so, withdrew from membership in the AZA in 2009. *See* Ex. C ¶ 8 and Ex. 3 to Ex. C.

---

[1] Breeding accidents do occur, regardless of birth control methods or procedures. It is the Trust's understanding that Matata's daughter, Neema who resides at the Milwaukee Zoo, accidentally became pregnant by her step brother on at least one and possibly two occasions while under the care of the Milwaukee Zoo. (Ex. B ¶ 23).

12. As a facility that conducts research funded by the National Institute of Child Health and Development ("NICHD"), the Trust is subject to rigorous oversight of its facilities and of the welfare of the animals who reside there. *See* Ex. C ¶ 9; *see also* Ex. B ¶ 10.  It is regulated, overseen and inspected by the Office of Laboratory Animal Welfare ("OLAW") a division of the National Institute of Health, the United States Department of Agriculture, and a local Institutional Animal Care and Use Committee ("IACUC"). *See* Ex. C ¶ 9; *see also* Ex. B ¶ 11.  The inspection reports for the bonobo building have been virtually deficiency free and it has been complimented for the superior quality of the facility, practices, staff and research program. *See* Ex. C ¶ 11; *see also* Ex. B ¶ 13.

13. Permitting Matata and Maisha to remain at the Trust does not present an imminent danger to the bonobos.  To the contrary, appointing a receiver that would require moving the bonobos from the Trust, before completion of the underlying interpleader litigation, would do *more harm than good*. *See* Ex. B ¶ 24-27; Ex. D ¶ 8-17; Ex. E ¶ 18-23; *see also* Ex. F ¶ 5-8; Affidavit of Sally Coxe Ex. G ¶ 8-9.

14. It is generally accepted in the zoological community that movement of apes be minimized due to the stress caused by transfers.  (Ex. F ¶¶ 6-7).

15. Movement of Matata and Maisha would expose them to detrimental stress and risk due to: sedation required for the move; exposure to microbiological agents to which they have not been previously exposed; the removal from their established colony made up of their family members, of which Matata is the matriarch; acclimation to a new environment where Matata would struggle to establish her social position and Maisha would inevitably be involved in fights with other male apes; possible intentional impregnation of Matata; and separation from Dr. Sue Savage Rumbaugh, Elizabeth Pugh, and William Fields, who have cared for and worked

with Matata continuously since 1978 and Maisha for his entire life. *See* Ex. D ¶ 8-17; *see also* Ex. B ¶¶ 20, 24-27; Ex. E ¶ 18-23; Ex. F ¶ 6-8; Ex. G ¶ 6-10.

16. The interpleader action is an appropriate legal remedy to address Zoo Atlanta's claimed ownership and desire to move Matata and Maisha to the Milwaukee Zoo to participate in an AZA affiliated breeding program.

17. Although there is no basis whatsoever for appointment of a receiver in this matter, should the Court determine a receiver is warranted, less drastic remedies are available that would not expose Matata and Maisha to the substantial risk of harm inherent in moving them prior to resolution of the ownership issues. A receiver with expertise in animal welfare could be appointed, to oversee their welfare at the Trust.

18. If preservation of Matata's bloodlines were determined to be an exigent circumstance, which is adamantly denied by the Trust, various less drastic remedies exist, including artificial insemination of Matata or breeding her offspring, including Maisha (by collecting semen for artificial insemination) and Neema, who is already a resident of the Milwaukee Zoo. *See* Ex. B ¶ 28.

19. "Where [as here], there is no fraud or imminent danger of property being lost, injured, diminished in value, or squandered, and where legal remedies do not appear to be inadequate, the appointment of a receiver should not be granted." *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir. 1959) (citing 45 Am. Jur. §§ 26, 30).

20. The Trust attaches here to and incorporates herein the declarations/affidavits of: Mwanza Ndunda, (Ex. A); William Fields, (Ex. B); James Aipperspach, (Ex. C); Dr. Bobby Brown, (Ex. D); Dr. Sue Savage Rumbaugh, (Ex. E); Benjamin Beck, (Ex. F); and Sally Coxe

(Ex. G). The Trust's Brief in Support of its Resistance to Zoo Atlanta's Application for Appointment of Receiver is filed contemporaneously with this Resistance.

WHEREFORE Plaintiff, Iowa Primate Learning Sanctuary d/b/a Great Ape Trust, respectfully requests that this Court deny Defendant Zoological Foundation of Georgia, Inc. d/b/a Zoo Atlanta's Application for Appointment of Receiver. In addition, the Trust prays for any further relief that the Court deems equitable and just.

The Trust requests oral argument regarding this matter.

        WHITFIELD & EDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA 50309-4195
Phone: 515-288-6041
Fax: 515-246-1474

By: /s/
    Jaki K. Samuelson    AT0006940
    samuelson@whitfieldlaw.com

By /s/
    B. MacPaul Stanfield    AT0007422
    stanfield@whitfieldlaw.com

ATTORNEYS FOR PLAINTIFFS, GREAT APE TRUST

Electronically filed.

Service List:

Gregory M. Lederer
Kimberly K. Hardeman
LEDERER WESTON CRAIG, PLC
118 Third Avenue SE, Suite 700
P.O. Box 1927

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause or to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on July 30, 2010.

By: ☐ U. S. Mail    ☐ FAX
    ☐ Hand Delivered    ☐ Overnight Courier
    ☐ Certified Mail    X Other: E-filing

Signature: /s/ Julie R. McCain

Cedar Rapids, IA 52406-1927

ATTORNEYS FOR ZOOLOGICAL
FOUNDATION OF GEORGIA, INC.,
D/ B/A ZOO ATLANTA

Sue Savage Rumbaugh
c/o William C. Zifchak
KAYE SCHOLER
425 Park Avenue
New York, NY  10022-3598

Democratic Republic of Congo
Ministry of Foreign Affairs
P.O. Box 7100
Foreign Minister for DRC, Kinshasa

Nicolas Mwanza Ndunda, PhD
Secretary General, Centre de Recherché en Ecologie et Foresterie
DRC Ministry of Education and Scientific Research
Kinshasa, Democratic Republic of Congo

Japan Monkey Centre Institute and
Museum of Primatology
26 Kanrin, Inuyama, Aichi
484-0081, Japan