IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| IOWA PRIMATE LEARNING SANCTUARY d/b/a GREAT APE TRUST, | ) ) ) | Case No. 10-52 |
| Plaintiff, | ) ) | DEFENDANT ZOOLOGICAL FOUNDATION |
| v. | ) ) | OF GEORGIA, INC. d/b/a ZOO ATLANTA'S |
| ZOOLOGICAL FOUNDATION OF GEORGIA, INC. d/b/a ZOO ATLANTA, DEMOCRATIC REPUBLIC OF CONGO, JAPAN MONKEY CENTRE INSTITUTE AND MUSEUM OF PRIMATOLOGY, and SUE SAVAGE-RUMBAUGH, Ph. D., | ) ) ) ) ) ) ) ) | REPLY BRIEF |
| Defendants. | ) | |

Defendant Zoological Foundation of Georgia, Inc., d/b/a Zoo Atlanta ("Zoo Atlanta"), pursuant to the Federal Rules of Civil Procedure and L.R.7(g), provides the following Reply Brief to Plaintiff's Resistance to Defendant's Application for Appointment of Receiver:

**A. The Great Ape Trust has no ownership rights of the bonobos and Zoo Atlanta is the Rightful Custodial Owner of Matata and Maisha.**

Plaintiff, Great Ape Trust ("GAT"), filed its Interpleader action on February 9, 2010, purportedly to resolve any potential competing ownership interests in two bonobos, Matata and Maisha. GAT asserts no ownership rights. Rather, GAT holds the bonobos only upon the existence of a loan agreement with Zoo Atlanta. Zoo Atlanta became the custodial owner of Matata by way of a loan agreement with Emory University/Yerkes Primate Research Center on or about May 4, 2000. (Doc.1, Ex. C). Based upon the language of that Agreement, "Emory will donate to Zoological Foundation of Georgia, Inc. one (1) Bonobo and **will relinquish ownership** of the animal to Zoological Foundation of Georgia, Inc., upon receipt of any appropriately signed and executed document." As is customary for most receiving institutions, Zoo Atlanta provided at

1

its sole expense, all of the care, feeding and housing for Matata and she continued to live at Georgia State University through 2004.

On May 28, 2000, Matata gave birth to a male bonobo, Maisha. This was 24 days after the transfer of Matata's custodial ownership to Zoo Atlanta. At the time of Maisha's birth, no breeding or offspring clauses were in place, with regard to the ownership rights of Maisha. (Document 1, Ex. E – *did not apply to Maisha*). In July of 2004, as a result of its custodial ownership of Matata and Maisha, Zoo Atlanta entered into a loan agreement with GAT for Matata and Maisha. (Doc. 1, Ex. K, L). At no time did GAT ever question the ownership rights of Zoo Atlanta for such bonobos. Furthermore, GAT in a follow up letter on July 1, 2004 by its Executive Director, Kirk Brocker, confirmed the ownership of Maisha belonging to Zoo Atlanta. (*See* attached, Ex. "A").

It is important to note that the loan agreement between Zoo Atlanta and GAT was a "breeding" agreement. Pursuant to Section C, Paragraph 8, "both institutions agree to act in accordance with the bonobo SSP recommendations for these individuals." If not for their SSP status, neither Matata nor Maisha would be at GAT. AZA certification is a requirement for SSP participation. GAT readily admits in its Resistance that it voluntarily relinquished its AZA accreditation in 2009. Following the same, Zoo Atlanta terminated its loan agreement in writing on December 9, 2009 (Doc. 1, Ex. N).

GAT is in violation of their loan agreement with Zoo Atlanta. GAT is retaining the bonobos without any viable ownership rights. As a result of the same, a receivership is immediately warranted pending the Interpleader action referred to above. GAT has no basis for the continued holding of the bonobos at the GAT facility.

**B. The Democratic Republic of the Congo (DRC) has no custodial ownership rights of Matata or Maisha.**

In its Resistance, GAT asserts that the DRC may have an ownership claim to the bonobos. Before the letter attached to GAT's Resistance to the Application for Appointment of Receiver, the DRC had never sought clarification of the ownership rights of Matata or Maisha and had never asserted ownership interests. From arguably 1975 through today's date, DRC has taken no action whatsoever with respect to the bonobos. The bonobos have been the subjects of multiple loan/breeding agreements, and have been housed in multiple facilities, without any question being raised by any entity as to Zoo Atlanta's ownership. In 2004, when Zoo Atlanta and GAT entered into its breeding agreement with regard to Matata and Maisha, GAT had no difficulty accepting ownership of 50% of Matata's offspring, without ever consulting the DRC. (Doc. 1, Ex. K, L).

To date, no Answer or responsive pleading has been filed on behalf of the DRC, Japan Monkey Centre Institute and Museum of Primatology, or Sue Savage-Rumbaugh, Ph.D. Furthermore, such parties have filed no Resistance to Zoo Atlanta's Application for Appointment of Receiver filed on June 25, 2010 (Doc. 8). While an Affidavit has been produced by GAT from Nicolas Mwanza Ndunda, it is unknown what his authority or affiliation within the DRC is. Moreover, without an Answer on file, such Affidavit is irrelevant. DRI is on notice of this action, and has not taken any action as a party to assert any ownership interests.

**C. Zoo Atlanta has established all factors warranting the Appointment of a Receiver and there is Imminent Danger that the Bonobos, while residing at GAT, will diminish in value.**

The parties do not dispute the factors warranting the appointment of a receiver. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314,316 (8th Cir. 1993). Zoo Atlanta has already identified in its Application, how the current scenario warrants establishment of a

3

receivership. (Doc. 8). The appointment of a receiver is particularly applicable in this case, where the subjects of this Interpleader action are two priceless bonobos.

The existing colony of bonbos at GAT is not adequate for breeding purposes for either Matata or Maisha. Matata's current family consists of 5 other bonobos who are directly related to her. Regardless of whether anyone can prove that Matata is unfit for breeding due to her age and/or health, she could not breed in this colony due to the close lineage of the group. (She has already miscarried at GAT in 2006 due to accidental inbreeding). Furthermore, there is no adequate mate for Maisha. GAT has provided no alternative for breeding for Maisha with an unrelated female. Currently, Matata and Maisha serve GAT only as controls for experimentation. This is clearly problematic when reviewing this case from the status of the preservation of the bonobo species. There is no question that, with Matata and Maisha remaining at the GAT, the bonobo species is endangered. GAT cannot use either bonobo to perpetuate the species.

**D. No other legal remedy exists for the protection of the bonobos and Appointment of a Receiver is in the Best Interests of the Bonobos.**

Outside of the appointment of a receiver and the transfer of the bonobos out of GAT, there is no other legal remedy available that will advance the preservation of the bonobo species. GAT, for the first time since its loan agreement with Zoo Atlanta in 2004, has now provided concerns with regard to transportation and relocation for Matata and Maisha. The Milwaukee County Zoo has one of the largest collections of captive bonobos in the world. The Zoo is one of the leading facilities in the world regarding the integration and care of bonobos ranging in age from birth to 60 years old. (Doc. 8, Ex. A). Arguably, by keeping the bonobos in a homogenous colony made up of no unrelated bonobos, Matata and Maisha are already adversely affected from a socialization, health and preservation of the species standpoint.

## CONCLUSION

As the custodial owner of Matata and Maisha, Zoo Atlanta has a valid claim to seek the appointment of a receiver in this matter. The extraordinary circumstances in this case warrant the appointment of a receiver for the protection and preservation of the bonobos and promulgation of the species. Zoo Atlanta, respectfully requests the Court immediately appoint the Milwaukee County Zoo as the temporary receiver for bonobos, Matata and Maisha, and for such other and further relief as the Court deems just and proper.

/s/ Kimberly K. Hardeman
Gregory M. Lederer, AT0004668
Kimberly K. Hardeman, AT0003230
LEDERER WESTON CRAIG PLC
118 Third Avenue SE, Suite 700
P.O. Box 1927
Cedar Rapids, IA 52406-1927
Phone: 319-365-1184
Facsimile: 319-365-1186
E-Mail: khardeman@lwclawyers.com
*Attorney for Defendant Zoological Foundation of Georgia, Inc. d/b/a Zoo Atlanta*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2010, I electronically filed the foregoing document with the Clerk of Court using the ECF system which sends a copy of the foregoing to:

Jaki K. Samuelson and B. MacPaul Stanfield
Whitfield & Eddy, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA 50309-4195
*Attorney for Plaintiff*

/s/ Kimberly K. Hardeman
KIMBERLY K. HARDEMAN