IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

IOWA PRIMATE LEARNING SANCTUARY )
d/b/a GREAT APE TRUST, )
)
　　　Plaintiff, )     Case No. 4:10-cv-00052
)
v. )
)
ZOOLOGICAL FOUNDATION OF )
GEORGIA, INC. d/b/a ZOO ATLANTA, )
DEMOCRATIC REPUBLIC OF CONGO, JAPAN )
MONKEY CENTRE INSTITUTE AND )
MUSEUM OF PRIMATOLOGY, and SUE )
SAVAGE-RUMBAUGH, Ph. D., )
)
　　　Defendants. )

## MEMORANDUM IN SUPPORT OF DEFENDANT SUE SAVAGE-RUMBAUGH'S MOTION FOR SPECIFIC PERFORMANCE AND RELATED RELIEF

　　　1.　　　Dr. Rumbaugh respectfully moves this Court for specific performance of the

Settlement Agreement[1] and Supplemental Agreement[2] in this matter (together, the

"Agreements").[3] Non-party Ape Cognition & Communication Institute ("ACCI"), the

purported successor entity to Plaintiff, Iowa Primate Learning Sanctuary ("IPLS"), is trying

to exercise complete ownership and control over all six of the bonobos housed at the former

---

[1] This refers to the ***Agreement for Settlement and Acknowledgment of Ownership***, by and between the Iowa Primate Learning Sanctuary, Zoological Foundation of Georgia, Democratic Republic of the Congo, and Dr. Rumbaugh, last to sign on February 17, 2013, attached hereto as Exhibit A.

[2] This refers to the ***Supplemental Agreement for Settlement and Acknowledgement of Ownership***, by and between Iowa Primate Learning Sanctuary, Emily Sue Savage-Rumbaugh, and Bonobo Hope Initiative, Inc., signed on January 31, 2013, attached hereto as Exhibit B.

[3] This Court retained jurisdiction over the Settlement Agreement to date by agreement of the parties as memorialized in its Order of Feb. 14, 2014. [Dkt. 66.] This Court has jurisdiction over the Supplemental Agreement because the Settlement Agreement refers to and is conditioned upon the Supplemental Agreement. *See* Settlement Agreement, Ex. A ¶ 7 ("[Dr. Rumbaugh's] willingness to execute this Agreement is contingent upon her simultaneously entering into a side agreement with [IPLS]"); *see also Hofmeyer v. Iowa Dist. Court for Fayette Cnty.*, 640 N.W.2d 225, 228 (Iowa 2001) ("Where a writing refers to another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing").

Great Ape Trust Facility, in contravention of its obligations under the Agreements.  This was recently revealed by Lyle Simpson, Esq. ("Simpson"), counsel for ACCI,[4] in his communications with William C. Zifchak, Esq. ("Zifchak"), counsel for Dr. Rumbaugh and for non-party Bonobo Hope Institute, Inc. ("BHI").[5]  Dr. Rumbaugh now requests that this Court (i) declare that ACCI is IPLS's legal successor and is bound under the Agreements; and (ii) enforce rights under the Agreements -- including, but not limited to, declaring that BHI is the joint owner of Kanzi, Nyota, Elikya, and Teco (the "Bonobo 4") under the Supplemental Agreement,[6] that Dr. Rumbaugh and BHI retain relocation rights over Maisha and the Bonobo 4 under both Agreements, and that DRC is the sole owner of Matata -- and resolve issues relating to the governance and administration of ACCI and BHI flowing from the Agreements.[7]

2.     *Alternatively*, Dr. Savage-Rumbaugh hereby moves that the Court either:

   a.  Declare that IPLS has ceased to exist and direct that custody and control of Maisha and the Bonobo 4 be transferred forthwith to Dr. Rumbaugh and BHI, as required under the Agreements; or

   b.  Reopen this litigation[8] and, among other things, permit Dr. Rumbaugh to

---

[4] Upon information and belief, Simpson also served as corporate counsel to both IPLS and BHI at all material times prior to on or about February 14, 2014.

[5] BHI is an Iowa non-profit organization and a sister organization to IPLS.  BHI's Articles of Incorporation and latest biennial report are attached hereto as Exhibit N.

[6] BHI may also be the joint owner over Maisha, an issue on which Dr. Rumbaugh is prepared to present evidence at hearing.

[7] Since BHI is not a party to this Interpleader action *per se* and to avoid an issue over whether BHI properly authorized intervention, BHI is not at this time seeking to intervene in the action or to participate in Dr. Rumbaugh's Motion. However, the following members of the Board of BHI, who upon information and belief constitute the true BHI Board at this time (in addition to Dr. Rumbaugh herself), unanimously endorse Dr. Rumbaugh's motion: Dr. Carmen Mate, Chair, Derek Wildman, Sally Coxe, Itai Roffman, Professor Nancy Howell and Professor Laurent Dubreill.

[8] To the extent the Supplemental Agreement is found to be not binding on ACCI or BHI, or was never binding on IPLS (and therefore, ACCI), then the Settlement Agreement would also be null and void because the signing of the

move to amend her answer to assert counterclaims against IPLS and ACCI and their respective officers and attorneys, including for sole ownership or custody of certain of the bonobos; for reimbursement of several hundred thousand dollars of her personal funds that she advanced to IPLS in or about 2012; for unpaid wages in the amount of at least $200,000 to Dr. Rumbaugh and others; for damages and medical expenses owing to personal injury suffered when Dr. Rumbaugh suffered a fall while working at the IPLS facility; and for her attorneys' fees and costs.

3.     Dr. Rumbaugh is prepared to demonstrate her right to the requested relief at an evidentiary hearing, if the Court so requires.

4.     To allow the Court adequate time in which to consider this Motion, Dr. Rumbaugh also moves the Court: (i) to preliminarily enjoin ACCI from taking any action contrary to the Settlement Agreement and Supplemental Agreement, including transferring, selling or encumbering any interest in the bonobos or related intellectual property, at least until this Motion is resolved; (ii) to continue its jurisdiction over both Agreements or over this litigation, as the case may be, at least until this Motion is adjudicated; (iii) to award Dr. Rumbaugh her costs of this Motion including her attorneys' fees; and (iv) such other relief as the Court deems just and proper.

5.     As the Court will recall, this is an action in Interpleader to determine the lawful ownership of two bonobos, Matata and her son, Maisha, that have been in continuous residence at IPLS since in or about 2004. On December 29, 2011, the court referred the case to a U.S. Magistrate Judge to oversee settlement discussions. [Dkt. 42.] Following

---

Supplemental Agreement was a condition precedent to Dr. Rumbaugh's signing the Settlement Agreement, as explained herein.

those discussions, the parties entered into the Settlement Agreement, which determined the

ownership rights to Matata and Maisha.[9]  Under the Settlement Agreement, Defendant

Democratic Republic of the Congo ("DRC") was the sole owner of Matata, and IPLS was

the owner of Maisha.  (Settlement Agreement, Ex. A ¶¶ 1 & 3.)  Non-party BHI signed the

Settlement Agreement in acknowledgement of certain, specified paragraphs.  (Settlement

Agreement, Ex. A at 5.)

      6.     As a condition of signing the Settlement Agreement, Dr. Rumbaugh required

that IPLS, BHI, and she simultaneously enter into a Supplemental Agreement.  (*See*

Settlement Agreement, Ex. A ¶ 7 ("[Dr. Rumbaugh's] willingness to execute this

[Settlement] Agreement is contingent upon her simultaneously entering into a side

agreement with [IPLS]").)

      7.     The Supplemental Agreement determined ownership rights to the Bonobo 4

and declared that BHI and IPLS "jointly are the owners" of the Bonobo 4.  (Supplemental

Agreement, Ex. B ¶ 1.)

      8.     The Agreements also gave Dr. Rumbaugh and BHI the right to determine the

relocation of Maisha and the Bonobo 4 if IPLS "cease[d] to exist."  Under the Settlement

Agreement, if IPLS ceased to exist, then (i) IPLS must give notice to this Court; (ii) IPLS

must give notice to BHI; and (iii) BHI in unison with Dr. Rumbaugh are to have "sole

discretion" regarding the placement of Maisha.  (Settlement Agreement, Ex. A ¶ 6.)

Similarly, under the Supplemental Agreement, if IPLS ceased to exist, then (i) IPLS must

give notice to this Court; (ii) IPLS must give notice to BHI and Dr. Rumbaugh; and

---

[9] Counsel of record for all parties executed and filed with this Court a Stipulation of Dismissal pursuant to the negotiated settlement on February 21, 2013. [Dkt. 59.]  Paul Burns, Esq. of Bradley & Riley PC, was and remains counsel of record to IPLS, having been substituted in for Jaki Samuelson, Esq. of Whitfield & Eddy because of a conflict of interest, on January 9, 2012. [Dkts. 44 & 45.]

(iii) BHI in unison with Dr. Rumbaugh are to have "sole discretion" regarding the

placement of the Bonobo 4. (Supplemental Agreement, Ex. B ¶ 4.)

      9.     Dr. Julie Gilmore signed the Settlement Agreement on January 31, 2013 for

both IPLS and BHI, as "Director" of each entity. (Settlement Agreement, Ex. A at 5.)

Dr. Julie Gilmore also signed the Supplemental Agreement as "Director" of both IPLS and

BHI. (Supplemental Agreement, Ex. B at 4.)

*Dr. Rumbaugh Is Banned From IPLS*

      10.    In or about November 2013, the Board of IPLS dismissed Dr. Rumbaugh

from the Board and forbade her from entering IPLS's facility and from having any access to

or interaction with any of the bonobos. (Zifchak Decl.,[10] Ex. C ¶ 7.) The IPLS Board took

these actions without notice to Dr. Rumbaugh or to BHI. (*Id.*) Since that time, IPLS (and

its successor, ACCI) has refused to grant Dr. Rumbaugh or any other member of BHI

regular access to the Bonobo 4, control over their care, control over the science in which

they are involved, or other rights to which BHI are entitled as joint owners. (*Id.*)

*Simpson Mentions Possible Successor For IPLS, Which He Represents Will Assume IPLS's*
*Obligations*

      11.    Following Dr. Rumbaugh being banned from the facility, Simpson contacted

Zifchak and described his plan to form a successor entity to IPLS. On December 18, 2013,

Simpson sent Zifchak an email in which he disclosed long-standing financial difficulties that

IPLS had been experiencing. (Email from Simpson to Zifchak (Dec. 18, 2013, 6:23pm EST),

attached hereto as Exhibit D.) According to Simpson, IPLS was subject to a $75,000 tax lien as

a result of its failure to pay unemployment taxes. (*Id.*) Also, because IPLS had failed to file its

---

[10] "Zifchak Decl." refers to the Declaration Of William C. Zifchak, Esq. In Support Of Defendant Sue Savage-
Rumbaugh's Motion For Specific Performance And Related Relief, attached hereto as Exhibit C.

annual report with the Iowa Secretary of State, "the Iowa Attorney General ended the corporation this summer."[11] (*Id.*) Because IPLS could not pay the tax lien, which was required for it to be reinstated, Simpson planned to establish a new non-profit corporation and to transfer ownership of all of the bonobos to that corporation. (*Id.*) This "new entity will assume the responsibility for the bonobos that IPLS assumed," but it would not accept responsibility for the $75,000 tax burden and other "uncompleted issues..." (*Id.*)

12.     Simpson then asked Zifchak if he would "be willing to review the transfer documents [for the bonobos] to make sure that you are satisfied that the rights of everyone remain exactly as they are today?" (*Id.*) Simpson also asked Zifchak whether he thought that this Court's approval would be needed to effectuate the transfer. (*Id.*) Simpson did not reveal that the new entity to which he was referring -- ACCI -- already had been formed. (*Compare* Dec. 18, 2013 Email, Ex. D (sent at 6:23pm EST) *with* ACCI's Articles of Incorporation, attached hereto as Exhibit F (filed with Iowa Secretary of State on Dec. 18, 2013 at 3:00pm CST).)

13.     Zifchak promptly replied by asking Simpson to send him the transfer documents to review. (Email from Zifchak to Simpson (Dec. 18, 2013, 5:27pm CST), attached hereto as Ex. G.) Simpson did not send Zifchak the transfer documents at that time or at any time prior to signing. (Zifchak Decl., Ex. C ¶ 10.) Also, Zifchak advised Paul Burns, litigation counsel for IPLS, that he thought this Court's approval <u>was</u> necessary for the transfer to be properly effectuated. (*Id.* ¶ 11.)

14.     On February 10, 2014, having not received any transfer documents, Zifchak wrote Simpson two letters requesting, among other things, information about the status of

---

[11] On August 9, 2013, IPLS was administratively dissolved by the Iowa Secretary of State for failing to deliver its 2013 Biennial Report. (*See* Certificate of Administrative Dissolution, attached hereto as Exhibit E.)

IPLS's efforts in light of the administrative dissolution, including what IPLS planned for its assets (*i.e.* the bonobos). In the first letter (sent on behalf of Dr. Rumbaugh and BHI), Zifchak "formally request[ed]" that Simpson "apprise us of whatever steps you have taken to reverse or bypass the administrative dissolution of IPLS by the Iowa Secretary of State, and the status of any such efforts." (Letter from Zifchak to Simpson (Feb. 10, 2014), attached hereto at Exhibit H.)

15.     In the second letter (sent on behalf of Dr. Rumbaugh), Zifchak requested that Simpson "disclose the 2014 business/strategic plan and budget for IPLS or conversely, any plans or proposals for the winding down of IPLS and the disposition of its assets." (Letter from Zifchak to Simpson (Feb. 10, 2014), attached hereto as Exhibit I.)

16.     Simpson never disclosed the existence of ACCI to Zifchak, Dr. Rumbaugh, or BHI in response to Zifchak's letters or thereafter. (Zifchak Decl., Ex. C ¶ 14.) Zifchak, Dr. Rumbaugh, and BHI did not find out about ACCI's existence until February 20, 2013, when one of Dr. Rumbaugh's attorneys learned about it through his own research. (*Id.*)

*After being Discovered, ACCI Reiterates That it has Assumed IPLS's Obligations*

17.     A week later, Simpson sent Zifchak an email purportedly on behalf of IPLS. (Email conversation between Zifchak to Simpson at 3-4, (Feb. 27, 2014), attached hereto as Exhibit J.) Simpson did not once mention ACCI.

18.     In response, Zifchak sent Simpson an email revealing that he had learned about ACCI a week before and asking why Simpson had not disclosed ACCI's formation earlier. (*Id.* at 3.) Simpson sent Zifchak a reply email acknowledging ACCI as IPLS's legal successor, and in the course of responding, Simpson reiterated ACCI's intention to assume IPLS's obligations, stating:

That organization [ACCI] is accepting all responsibility for IPLS

> commitments except IPLS debt created by Ted Townsend. ACCI is accepting <u>all responsibility for all actions of IPLS</u> since IPLS separated from Ted's control in 2011. It is using IPLS for all current activity except public liability for the real estate and <u>both organizations are listed on the liability insurance policy</u> as insured's. <u>Effectively IPLS is now an assumed name of ACCI and it is operating under all the licenses of IPLS and its tax exempt status.</u>

(*Id*. at 1-2.) (emphasis added).

19.    Weeks later, ACCI's Scientific Program Manager, Jared Taglialatela ("Taglialatela"), sent an email to members of both the ACCI and BHI boards to "provide you with the following information that summarizes some of our major efforts, as well as our vision of the path for the future." In the preamble to this email, Taglialatela *again* reiterated ACCI's intentions to assume IPLS's obligations by stating the following:

> [Y]ou will notice that I am referring to a new organization, "The Ape Cognition and Communication Institute (ACCI)". Without going into too much detail, it was necessary for us to form a new entity – but <u>ACCI basically assumes all of the responsibilities of IPLS. Moving forward, IPLS will no longer exist, and we will be known as THE APE COGNITION AND COMMUNICATION INSTITUTE.</u>

(Email from Jared Tagliatela, at 1 (March 14, 2014, 8:30am) (emphasis added), attached hereto as Exhibit K.)

*ACCI Reverses Course and Renounces the Settlements*

20.    At the beginning of June 2014, Simpson, on behalf of ACCI, suddenly reversed course on this issue. On June 2, 2014, Simpson sent Zifchak an email stating that BHI, in fact, ***was not*** a joint owner of the Bonobo 4 and that the Supplemental Agreement (and perhaps the Settlement Agreement) was never approved by the IPLS Board. (Email conversation between Simpson and Zifchak, at 2 (June 2, 2014), attached hereto as Exhibit L.) By asserting that BHI had no joint ownership rights in the Bonobo 4, Simpson, in effect, was renouncing the Supplemental Agreement, distancing ACCI from IPLS's

counsel of record (Paul Burns) and the Stipulation of Dismissal, and was, instead, asserting that ACCI had sole ownership and control over the Bonobo 4.[12]

21.     Simpson also called into question what had, up until that point, been considered a given -- that Matata was owned by DRC. (*See id.* at 1 (stating that because the nation of Zaire -- which had originally owned Matata -- no longer existed and was, instead, now the DRC, DRC had no ownership rights over Matata).)  This is expressly opposite of what the parties had agreed to in the Settlement Agreement. (*See* Settlement Agreement, Ex. A ¶ 1 ("All parties stipulate and agree that DRC is the sole owner of Matata").)

*IPLS/ACCI Admits That It Transferred The Bonobo 4 On December 18, 2013 For $1*

22.     Shortly thereafter, Simpson provided Zifchak with a "Bill of Sale," which revealed that IPLS purportedly transferred its interests in Matata, Maisha, the Bonobo 4, and its other assets to ACCI months earlier, on December 18, 2013.  (Bill of Sale (Dec. 18, 2013), attached hereto as Exhibit M; Zifchak Decl., Ex. C ¶ 16.)  That is the same day that Simpson sent his email first informing Zifchak about his plans to form a successor entity, (*see* Dec. 18, 2013 Email, Ex. D), and the same day that ACCI was formed. (*See* ACCI Arts. of Incorp., Ex. F.)

23.     The Bill of Sale is signed by the same two officers for both IPLS and ACCI, namely, Meg Fitz and Bill Hopkins. (Bill of Sale, Ex. M.)  The Bill of Sale purports to "assign, transfer and set over unto Ape Cognition & Communication Institute..., all right

---

[12] As noted, to the extent that ACCI is renouncing the Supplemental Agreement or contends that it is not binding on it or BHI, or was never binding on IPLS, then Dr. Rumbaugh's consent to the Settlement Agreement would also be null and void.

However, because it was only last week that counsel to ACCI revealed to Dr. Rumbaugh and Zifchak that ACCI, in fact, was disavowing the Agreements, Dr. Rumbaugh and BHI in the interim may well have acted in reliance upon the Agreements to their detriment. Therefore, Dr. Rumbaugh respectfully requests that IPLS and ACCI be promissorily estopped from asserting against her and BHI actions that she and BHI may have taken while they believed that the Agreements were in full force and effect.

title and interest in" Maisha, the Bonobo 4, and all of IPLS's other assets, and to transfer its

interest in Matata, in exchange for $1.[13]   (*Id.*)  Glaringly, the Bill of Sale does not purport to

transfer any of the obligations to which Maisha or the Bonobo 4 are subject (such as BHI's

joint ownership rights to the Bonobo 4 under the Supplemental Agreement or

Dr. Rumbaugh's and BHI's right to determine relocation under the Agreements).[14]

*The Court's Assistance Is Imperative*

24.   ACCI now continues to maintain that the Supplemental Agreement is not

valid or is not enforceable upon it and that it, by virtue of the Bill of Sale, is now the sole

owner of the Bonobo 4 (in direct contradiction to its representations since December 2013).

As a consequence, ACCI has largely excluded BHI and especially Dr. Rumbaugh from an

oversight role in scientific research at ACCI that was intended by and a premised upon

which Dr. Rumbaugh executed the Agreements.  Dr. Rumbaugh takes strong issue with

ACCI's position and maintains that BHI is a joint owner of the Bonobo 4 under the

Supplemental Agreement and that she and BHI retain additional rights related to ownership

of the Bonobo 4 and Maisha under both Agreements.

25.   In an attempt to resolve the dispute over ownership of the Bonobo 4 and

Maisha and related rights, Zifchak circulated a proposed Memorandum of Understanding to

ACCI's outside counsel, William Miller, Esq. of Dorsey & Whitney, on June 10, 2014.

(Zifchak Decl., Ex. C ¶ 18.)  Despite this effort, discussions broke off on June 13, 2014.

(*Id.* )  The parties now require the Court's resolution and imprimatur on the matters

---

[13] The Bill of Sale also raises the question of whether the purported transfer of the bonobos and other assets from IPLS to ACCI was proper or whether it constitutes a fraudulent transfer.

[14] Although by the Bill of Sale ACCI acknowledges DRC's ownership of Matata, that is merely a voluntary action. The Settlement Agreement also imposes obligations on ACCI as to the treatment of Matata, which ACCI is implicitly disavowing. The situation needs to be clarified, as this raises an issue as between 2 sovereign states.

discussed herein.

26.     Counsel for co-defendant Democratic Republic of the Congo concurs with this Motion.  Counsel for co-defendant Zoological Foundation of Georgia d/b/a Zoo Atlanta has not indicated whether or not he concurs with this Motion.  It is unclear who is counsel to plaintiff IPLS for purposes of any motion practice.  Paul Burns, Esq., counsel of record to IPLS, has stated to counsel for Dr. Rumbaugh that he is no longer employed by IPLS. William Miller of Dorsey & Whitney LLP, outside counsel to ACCI, has not consented to this Motion.

WHEREFORE, Dr. Rumbaugh respectfully requests that the Court enter an Order (i) declaring that the Settlement Agreement and Supplemental Agreement are enforceable upon ACCI, as the successor entity to IPLS, enforcing rights under the Agreements, and resolving issues relating to the governance and administration of ACCI and BHI flowing from the Agreements; or in the alternative; (ii) declaring that IPLS has ceased to exist and directing that custody and control of the bonobos be transferred forthwith to Dr. Rumbaugh and BHI, as set out in the Agreements; or in the alternative (iii) declaring that the Settlement Agreement and Supplemental Agreement are null and void and reopening this litigation; and (iv) granting the related relief requested in ¶ 4, above; and (v) granting such other relief as the Court deems just and equitable.

DATED:  June 13, 2014                    FAEGRE BAKER DANIELS LLP

                                         /s/ Todd P. Langel
                                         Todd P. Langel
                                         801 Grand Avenue, 33rd Floor
                                         Des Moines, IA 50309-8011
                                         Telephone:  (515) 248-9000
                                         Facsimile:  (515) 248-9010
                                         todd.langel@faegrebd.com

                                         and

                                         KAYE SCHOLER LLP

                                         William C. Zifchak*
                                         425 Park Avenue
                                         New York, NY 10022
                                         Tel:   212-836-8743
                                         Fax:  212-836-6743
                                         Cell:  347-525-5143
                                         wzifchak@kayescholer.com
                                         *admitted pro hac vice

                                         Ross Neihaus*
                                         Three First National Plaza
                                         70 West Madison Street, Suite 4200
                                         Chicago, Illinois  60602
                                         Tel:  (312)583-2458
                                         Fax:  (312)583-2558
                                         ross.neihaus@kayescholer.com
                                         *pro hac vice admission pending

                                         ATTORNEYS FOR DR. SUE SAVAGE-
                                         RUMBAUGH, PH.D.

## Certificate of Service

The undersigned hereby certifies that a true copy of this **Memorandum in Support of Defendant Sue Savage-Rumbaugh's Motion for Specific Performance and Related Relief** was served upon the following parties through the court's CM/ECF electronic filing system on the 13th day of June, 2014:

Paul D. Burns
Bradley & Riley PC
Tower Place
One South Gilbert
Iowa City, IA 52240-3914

Gregory M. Lederer
Kimberly K. Hardeman
Lederer Weston Craig, PLC
118 Third Avenue Se, Suite 700
P.O. Box 1927
Cedar Rapids, IA 52406-1927

William W. Graham
Graham Ervanian & Cacciatore, LLP
317 Sixth Avenue
Suite 900
Des Moines, IA 50309

A copy was also served upon the following attorney via email on the 13th day of June, 2014:

William J. Miller
Dorsey & Whitney
801 Grand Avenue, Suite 4100
Des Moines, IA  50309
miller.william@dorsey.com

/s/ Todd Langel

US.54359475.01