1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

- - - - - - - - - - - - - - - - - - X
IOWA PRIMATE LEARNING SANCTUARY,   :
d/b/a GREAT APE TRUST, and APE     :
COGNITION & COMMUNICATION          :
INSTITUTE,                         :
                                   :
     Plaintiffs,                   :
                                   :
vs.                                :   Case No. 4:10-cv-00052
                                   :
ZOOLOGICAL FOUNDATION OF GEORGIA,  :   HEARING TRANSCRIPT
INC., d/b/a ZOO ATLANTA;           :   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
JAPAN MONKEY CENTRE INSTITUTE      :
AND MUSEUM OF PRIMATOLOGY;         :
SUE SAVAGE-RUMBAUGH, Ph.D.;        :
                                   :
     Defendants.                   :
- - - - - - - - - - - - - - - - - - X
BONOBO HOPE INITIATIVE, INC.,      :
                                   :
     Intervenor Defendant.         :
- - - - - - - - - - - - - - - - - - X

                         Courtroom, Fourth Floor
                         U.S. Courthouse
                         123 East Walnut Street
                         Des Moines, Iowa
                         Thursday, December 18, 2014
                         9:30 a.m.


BEFORE:  THE HONORABLE ROSS A. WALTERS, Magistrate Judge.




          ***TRANSCRIBED FROM A DIGITAL RECORDING***



              KELLI M. MULCAHY, CSR, RMR, CRR
                 United States Courthouse
              123 East Walnut Street, Room 115
                 Des Moines, Iowa 50309

APPEARANCES:

For the Plaintiffs:                 WILLIAM J. MILLER, ESQ.
                                    BRIAN A. MELHUS, ESQ.
                                    Dorsey & Whitney, LLP
                                    801 Grand Avenue, Suite 4100
                                    Des Moines, Iowa  50309-8002

For Defendant                       GREGORY M. LEDERER, ESQ.
Zoological Foundation               Lederer Weston Craig, PLC
of Georgia, Inc.:                   118 Third Avenue SE, Suite 700
(Via telephone)                     Cedar Rapids, Iowa  52401

For Defendants                      ROSS H. NEIHAUS, ESQ.
Savage-Rumbaugh                     Kaye Scholer, LLP
and BHI:                            70 West Madison Street, Suite 4200
                                    Chicago, Illinois  60602

                                    TODD P. LANGEL, ESQ.
                                    Faegre Baker Daniels, LLP
                                    801 Grand Avenue, 33rd Floor
                                    Des Moines, Iowa  50309-8011

<u>P R O C E E D I N G S</u>

1

2          (In open court.)

3          MR. LEDERER:  Judge, how are you?

4          THE COURT:  I'm just fine, and you're coming through

5  loud and clear.  We're in the courtroom this morning because we

6  also -- somebody asked for a court reporter, and, you know, all

7  of our court reporters are either in Davenport or Council Bluffs

8  in trial so I don't have an in-house reporter.  But what is

9  being said is being recorded on our internal recording system,

10  and if anybody would like a transcript of it, they can order it

11  and one of our court reporters in due course will prepare it for

12  you.

13          This is the -- what I'll just call the bonobos case.

14  And, you know, I deal with this case just infrequently enough

15  that every time something comes up I have to learn all over

16  again who's who and what's what, and I've tried my best, and I

17  think I have a little bit of a head start on that.

18          But, you know, the last time we were together, which

19  was on October the 8th, the way that conference broke up is that

20  the parties were talking about resolving the issues brought

21  forward by the pending motion for specific performance filed by

22  Ms. Savage-Rumbaugh.  You were going to continue your

23  discussions and possibly contact me with regard to a status

24  conference or -- I'm sorry -- settlement conference or we would

25  hold another status conference.

1          Well, we've been asked to hold another status

2     conference, from which I assume it is not settled, but you have

3     continued to talk, and we need to visit today about how we might

4     bring this -- these matters to a close.  So I need to be updated

5     on where you are, and, of course, I want to know what you want

6     the Court to do to help you out.

7          Who'd like to take the lead?

8          MR. NEIHAUS:  I'm happy to do so, Your Honor.  Ross

9     Neihaus for Defendant Dr. Sue Savage-Rumbaugh and Intervenor

10    Defendant Bonobo Hope Initiative.

11         Yes, last time we were in court we discussed possibly

12    settling the case.  Since that time the parties have been in

13    regular communication, and both the lawyers and the parties

14    themselves have communicated about settling the case.

15         There were some short discussions about settlement,

16    but, unfortunately, at this point we feel the talks have gone

17    nowhere and we don't feel that they are going to proceed any

18    further so we'd like to proceed with our motion for specific

19    performance.

20         THE COURT:  Well, we can set that.  Now, you know,

21    you'll recall there was a possibly jurisdictional issue to the

22    extent that the supplemental agreement is attempting to be

23    enforced, because that really wasn't part of interpleader

24    action, and so we don't have to resolve that here today, but

25    that is one gateway issue to dealing with that particular

1  supplemental agreement.

2          Well, all right.  So you think we need to go ahead and

3  schedule a hearing, right?

4          MR. NEIHAUS:  Yes, Your Honor.

5          THE COURT:  How about on the other side?

6          MR. MILLER:  Thank you, Your Honor.  Bill Miller on

7  behalf of ACCI and, in a way, its predecessor, IPLS.

8          Your Honor, I generally agree with Mr. Neihaus'

9  summary of where we stand.  Unfortunately, we haven't come to a

10  resolution.  I'd say there's still a possibility, but I don't

11  have a lot of hope, and if they're interested in getting

12  something scheduled, it seems like we should.

13          Your Honor, if you've had a chance to look at the

14  recent briefing, kind of where we left off was, from our

15  perspective, it seemed like we were dealing with an evolving set

16  of issues, evolving and expanding set of issues.  At some point

17  it had been suggested by Dr. Rumbaugh that an evidentiary

18  hearing may be necessary.  It seems there may be discovery

19  necessary as regarding the various issues.

20          So, unfortunately, it doesn't seem that this matter

21  can just be teed up for a hearing on the motion.  We may

22  actually have additional work to do prior to that point, and

23  that would be the only thing I'd offer for the Court's

24  consideration.

25          I've given, I guess, a little bit of thought about

1  that, but I don't know exactly where we go from this moment,

2  given that reality.

3           THE COURT:  What is the -- I mean, what, have you

4  narrowed the issues at all?  I mean what's the guts of the

5  dispute that still remains?

6           MR. NEIHAUS:  Respectfully, Your Honor, I disagree

7  with counsel's characterization of the motion as involving an

8  expanding set of issues.  We're dealing with a relatively

9  discrete set of issues.

10          Settlement agreement was signed and it gave certain

11 rights.  Since the time the settlement agreement was signed, our

12 client, Dr. -- Dr.  Rumbaugh, has been completely locked out of

13 the facility, and the organization, Bonobo Hope Initiative, of

14 which she's a director, has been given almost no access to the

15 facility and has no control over the science in which the

16 bonobos are involved, which is their role as an organization.

17 That's what they were created to do is to control the science in

18 which the bonobos were involved.

19          Bonobo Hope Initiative, per the settlement agreements

20 and the side agreement, are co-owners of four of the five

21 bonobos that currently reside at the facility, and -- and

22 they've simply been locked out and been given no rights.  That's

23 the issue we're adjudicating.

24          And there's also a question about when IPLS had ceased

25 to exist, according to both the settlement agreement and the

1    side agreements, they were supposed to notify this Court, and

2    then Dr. Savage-Rumbaugh and Bonobo Hope Initiative were

3    supposed to have the right to relocate the bonobos where they

4    saw fit.

5            So it's a relatively discrete set of issues.  It's not

6    expanding.  We don't feel that discovery is necessary.  We're

7    ready to proceed to hearing as soon as the Court's willing to

8    schedule it.

9            THE COURT:  Mr. Miller, do you think discovery is

10   necessary?

11           MR. MILLER:  I do, Your Honor.  Unfortunately, I think

12   Mr. Neihaus' description of the issues he just gave you

13   indicates some of the issues that are underlying and open.  You

14   know, there's arguments.  I mean, it's a fine argument for the

15   motion and the like, but there's disputes as to whether or not

16   there was access given, what right to access there was, things

17   like that.  I just think that there are open questions.

18           I believe, if I'm not mistaken, the original request

19   for an evidentiary hearing came from Dr. Rumbaugh, and we,

20   frankly, are unsure how we can delve into these issues

21   appropriately in the motion without addressing them.  Suffice to

22   say we'd prefer not to, but I just don't know if there's any way

23   that can be avoided.

24           THE COURT:  Mr. Neihaus, apart from the discovery

25   issue, do you agree any such hearing would have to be an

1  evidentiary hearing?

2          MR. NEIHAUS:  Yes.  We'd like an evidentiary hearing.

3  We'd like to call witnesses, introduce documents.

4          THE COURT:  I assume ACCI still has the bonobos and is

5  operating the facility; is that true?

6          MR. MILLER:  I'm -- I didn't catch --

7          THE COURT:  I'm sorry.  I assume that your client,

8  ACCI, still has the bonobos and is operating the facility; is

9  that true?

10          MR. MILLER:  That's correct, Your Honor.  They're

11  taken care of.

12          THE COURT:  You're, I was told, not here today on

13  behalf of IPLS, and I -- this may get into the triggering issue,

14  but is IPLS as an entity still actively involved in the case or

15  are you proceeding as the successor of IPLS?

16          MR. MILLER:  Well, IPLS -- I'm largely here as the

17  successor, although they are one and the same entity, and over

18  the course of time I think it would show -- the record will show

19  that they're the same, notwithstanding the change of name.  And,

20  in fact, as I -- as it occurs to me here, we have issues with

21  regard to the claim about the successor interest and the like

22  and Dr. Rumbaugh's participation and involvement in that as well

23  as we discuss here, so I think there will be some defenses

24  surrounding that that will need to be explored as well.

25          THE COURT:  Thank you.

1          Mr. Lederer, what do you think about all this?

2          Are you there?

3          MR. LEDERER:  Sorry.  I forgot I pushed mute.

4          THE COURT:  All right.

5          MR. LEDERER:  I apologize.  Your Honor, my client

6    signed a settlement agreement and wants to be done with this.

7    They're really not interested in the current dispute.

8          THE COURT:  The only -- does the zoo still have an

9    interest in the surviving -- is it Maisha -- of the two

10   original, I'll call them, interpleader bonobos?

11         MR. LEDERER:  I believe --

12         THE COURT:  Was that --

13         MR. LEDERER:  I believe that the settlement agreement

14   ends their interest in any bonobo.

15         THE COURT:  And the zoo does not claim any interest as

16   well --

17         MR. LEDERER:  They --

18         THE COURT:  -- is that true?

19         MR. LEDERER:  They're not claiming any interest in any

20   bonobo -- well, in any bonobo that's in Iowa.

21         THE COURT:  Right.  Well, none of the five

22   that -- well, four may be before us, one for sure is, but none

23   of the -- none of those --

24         MR. LEDERER:  None of the bonobos that are appearing

25   before the Court at this time.

1          THE COURT:  All right.  Now, well, if that's the case,

2    other counsel, is there any reason for the zoo to participate?

3    Is any relief being sought as it relates to the zoo?

4          MR. NEIHAUS:  Well, Your Honor, if the settlement

5    agreements are found to have been breached and are undone, then

6    presumably all the zoo's rights that it had originally it would

7    still have, and it might consider a different position at that

8    time.

9          THE COURT:  Well, the undoing the agreements was your

10   last resort.  You wanted to enforce them.

11         MR. NEIHAUS:  That's correct.

12         THE COURT:  And is that still your primary relief that

13   you're requesting?

14         MR. NEIHAUS:  That is a question that I -- that I

15   can't address right now.  There's -- we'd first asked for the

16   settlement agreements to be enforced and alternatively asked for

17   relocation, for Dr. Rumbaugh's and Bonobo Hope's relocation

18   rights to be invoked.  We would ask for one of those two forms

19   of relief.

20         THE COURT:  All right.  So any lingering interest the

21   zoo may have would depend upon whether or not the agreements are

22   undone?

23         MR. NEIHAUS:  Yes, Your Honor.

24         THE COURT:  All right.  But that doesn't sound that

25   the zoo really is interested in claiming an interest; is that

1  true, Mr. Lederer?

2          MR. LEDERER:  That's correct, Your Honor.

3          THE COURT:  Well, I'll leave it up to you,

4  Mr. Lederer, as to whether and how you want to get out of all

5  this, but I'll go ahead today and we'll tee it up for some kind

6  of evidentiary hearing.

7          Now, before there's an evidentiary hearing, let's talk

8  about discovery.  You say you need some discovery.  Now, what do

9  you need and how much?

10          MR. MILLER:  Your Honor, before we get into that, can

11  I make one suggestion?

12          THE COURT:  Sure.

13          MR. MILLER:  You know, you noted, and I meant to say

14  something about, the jurisdictional issue.  I come here on a

15  continuing goal to get this resolved for my clients and for --

16  for Mr. Neihaus' clients.  It seems to me if we have a

17  jurisdictional issue -- and get it resolved in a cost-effective

18  manner.

19          If we have a jurisdictional issue, perhaps we should

20  brief that and address that and then take up the discovery

21  issue.  Or they could be simultaneous, but it just occurs to me

22  if the outcome of all this is that this Court's not going to

23  have jurisdiction, which would seemingly be an issue, it seems

24  to me, that is going to be able to be addressed on what we have

25  in front of the Court now, not further discovery, maybe we could

1  take that up first.

2          But, you know, this has been a cloud hanging over our

3  operations.  I'd like to get a solution, period, but I'm also

4  mindful of putting a bunch of time and energy towards something

5  that turns out to be fruitless, so I just want to raise that for

6  the Court's consideration.

7          THE COURT:  Well, the Court would have subject matter

8  jurisdiction.  Now, I'm putting aside the issue as to whether or

9  not Judge Gritzner thinks he should continue to exercise it, but

10  at least the Court would have -- would continue to have

11  jurisdiction over Maisha, right, and that -- and Maisha's status

12  still has to be resolved so there's got to be some sort of

13  hearing in this court with regard to Maisha, right?

14          MR. MILLER:  Perhaps, Your Honor, although

15  you're -- the question raised about jurisdiction as we were

16  preparing for today got us looking at that issue thinking about

17  where the Court might be coming from.  I think there may be an

18  issue now with respect to diversity being spoiled in the case

19  because we've now had a couple of Iowa intervenors join,

20  Dr. Rumbaugh is also an Iowa citizen, and I think there may be a

21  subject matter jurisdiction problem.

22          I hate to say it, given -- given this -- the current

23  posture of the case.  And so I -- I guess I struggle to put my

24  finger on what the supplemental agreement jurisdictional issue

25  would be, but that may be another aspect of it too.

1          THE COURT:  Well, the problem with -- well, speaking

2    off the top of my head and not necessarily for Judge Gritzner,

3    the thing about the supplemental agreement is that it involves

4    four bonobos who were not part of the original interpleader.  It

5    also involves a separate agreement which is solely between Iowa

6    citizens.

7          MR. MILLER:  Right.

8          THE COURT:  And I suppose the argument would be

9    somehow that the Court could exercise supplemental jurisdiction

10   over it, but when you have a separate agreement involving

11   separate property, that's where you're going to -- that would be

12   the stumbling point.

13          Certainly if you tried to sue separately right now in

14   federal court solely on the basis of the supplemental agreement,

15   I don't see how there could be diversity jurisdiction, so

16   you're -- I think you'd be limited to supplemental jurisdiction.

17   And the issues are related in that it's the same sort of

18   disagreement between the parties, but you were talking about

19   interpleader and talking about separate property and a separate

20   agreement, a contract that certainly independently the Court

21   would have no jurisdiction over, so that's -- I think that has

22   to be hashed out.

23          But the problem with doing this piecemeal is that

24   you're just going to keep lingering, and I imagine that the

25   upset between the parties will continue and all the angst, and I

1   don't know if this is all particularly good for the bonobos.

2   Obviously, I think both sides are concerned about them and

3   getting a resolution.  So I wonder if we might not put the whole

4   thing together.

5           Though if -- I think, as counsel, you would be

6   obligated, if you believe that the Court does not have

7   jurisdiction, to file what is commonly called a suggestion the

8   Court lacks jurisdiction, and the Court would have to decide

9   that.  Judge Gritzner has the option, of course, of deciding

10  that separately.

11          But I think we ought to get it ready to go because

12  you're going to have -- you're probably -- frankly, I've never

13  been 100 percent sure of the initial jurisdiction, but we've

14  gone down a long path, but you're probably -- that's why I say

15  you're probably going to have to deal with Maisha somehow so we

16  might as well tee it up for a hearing and have it ready to go so

17  we can resolve it if we can.  And if it turns out the Court

18  lacks jurisdiction -- I mean, that issue is going to have to be

19  dealt with.  You're going to have to brief it, no question about

20  it.

21          MR. MILLER:  Very good, Your Honor.

22          THE COURT:  But so let me go back to my question.

23  Now, what do you need in terms of discovery, other than -- does

24  there need to be any discovery other than perhaps involving the

25  principals, Ms. Savage-Rumbaugh and whoever is running ACCI

1  these days?  What --

2          MR. MILLER:  I -- I don't --

3          THE COURT:  Are you talking depositions?

4          MR. MILLER:  I don't believe so, Your Honor.  I mean,

5  I think we need to understand -- I need to take another look at

6  it, I guess, and get more specific, obviously, but my -- my

7  understanding is there's claims with respect to, "We've been

8  shut out," is the argument generally, and, "We are entitled to

9  certain things," "we" being the -- our opponent, and that

10 they -- when I think those are not, in fact, the case, that they

11 don't give rise to grounds about this enforcement; that

12 everybody has been proceeding under these agreements as they're

13 understood, but then I think there's dispute over what the

14 intent was of the agreement.

15          So I think there would have to be some discovery

16 respect to that and what the intentions and the way that these

17 agreements were operated from the time they were signed.

18          THE COURT:  Well, specifically, what would you need

19 other than Ms. Savage-Rumbaugh's deposition?  I mean, it seems

20 to me written discovery is kind of an exercise.  I mean, you all

21 know what the documents are and you know -- you know who the

22 witnesses are and all that.

23          MR. MILLER:  I -- I agree --

24          THE COURT:  Don't know if you --

25          MR. MILLER:  -- with you on that, Your Honor.  I think

1  maybe a deposition of a representative of BHI, but beyond that,

2  that's likely going to be adequate.

3        THE COURT:  So probably a couple depositions at the

4  most.

5        Mr. Neihaus, I understand you don't think you need

6  any, but, obviously --

7        MR. NEIHAUS:  That's correct, Your Honor.

8        THE COURT:  -- if they're going to take one, you might

9  want one as well.

10        MR. NEIHAUS:  Yes, Your Honor.  If counsel is going to

11  take one, then we'll take one as well, but we don't feel that

12  discovery is necessary.

13        Counsel stated he needs discovery as to the issue

14  about right of access.  Right of access and why our clients are

15  not being granted right of access is an issue that their clients

16  know about.  That's an issue that they'd have to ask their

17  clients about.  They don't need to ask our client why she's

18  being locked out.

19        Our client doesn't know why she's being locked out and

20  she thinks it's unfair, and that's what she's here contesting.

21  So I don't know what purpose discovery would serve at this

22  point.

23        THE COURT:  Well --

24        MR. NEIHAUS:  And if --

25        THE COURT:  -- whatever it is, it would be -- it would

1  be short and it would be in the nature of a couple of

2  depositions, right?

3          MR. MILLER:  Sure.

4          THE COURT:  Well, if we build in time for that -- and

5  I'd be inclined to let you each take a couple depositions if you

6  want to, but if we do that, if we're looking for a time for an

7  evidentiary hearing, give me a time period that would be

8  reasonable.  Sometime, obviously, fairly early next year is what

9  you'd be thinking of, right?

10          MR. NEIHAUS:  Yes, Your Honor.  And I'd like to stress

11  time is of the essence here.  You asked whether ACCI is

12  currently caring for the bonobos.  Yes, the bonobos are

13  currently in the ACCI facility, but as we understand it, ACCI

14  might be in very serious financial straits, and we've heard

15  reports that their ability to care for the bonobos going forward

16  is in question.

17          We've heard reports that the power company has

18  threatened to turn off the electric and that -- because of

19  outstanding bills, and that was an issue that surfaced months

20  ago.  And at one point the power company threatened to turn off

21  the power on October 25th.  And, as we understand it, the power

22  still is on there, but we're not sure how or why that happened.

23          We have concerns about the heating at the facility.

24  The heating has failed in the past.  We have concerns about

25  flooding at the facility.  The facility is built in a flood

1  plain, and, as we understand it, the water levels are very high

2  this year.

3          The -- the lead scientists at ACCI are only there, as

4  we understand it, one day a month, and the rest of the time the

5  facility is staffed by volunteers, and, as we understand it, the

6  staff of volunteers is thin, and we have questions about whether

7  they're adequately trained to take care of the bonobos.

8          So we have serious concerns about the bonobos'

9  well-being, particularly during the wintertime, so we'd ask for

10  a hearing as quickly as possible, and we're ready to go in

11  January, if Your Honor is ready.

12          THE COURT:  Well, I can be ready, but I'm not going to

13  do it, so you've got -- it will be Judge Gritzner.

14          Knowing Judge Gritzner's calendar and knowing we may

15  have a jurisdictional issue which the Court does have to deal

16  with, and allowing a little bit of time for discovery, I really

17  don't see, Mr. Neihaus, how it could be scheduled before March.

18  I think probably a March time frame would be reasonable, if you

19  cooperate in scheduling your depositions.

20          You agree, Mr. Miller?

21          MR. MILLER:  Agreed, Your Honor.

22          THE COURT:  Why don't I get some time in March for

23  Judge -- Judge Gritzner.  I -- I know he has other things set in

24  March so I don't -- I'll do my very best.

25          Kathy, do you -- are you looking at his calendar?

1          LAW CLERK NUTT:  I'm in communication right now.

2          MR. NEIHAUS:  Your Honor, if I --

3          THE COURT:  Sure.  Sure.

4          MR. NEIHAUS:  -- may make one comment about

5    jurisdiction.

6          THE COURT:  Right.

7          MR. NEIHAUS:  You mentioned supplemental jurisdiction

8    and that some of the issues are the same.  It's our position

9    that the issues are actually exactly the same.  While the

10   supplemental agreement is a separate contract, it is mentioned

11   explicitly in the main agreement, and in the main agreement it

12   says that our client only signed the agreement because the

13   parties entered into a side agreement.

14          The side agreement mirrors very closely, and in some

15   place -- in a lot of places is identical to, the language of the

16   main agreement.  It's the same thing just concerning different

17   bonobos.

18          So the actual legal issues and the factual issues that

19   we're going to present are the exact same thing, the exact same

20   witnesses, the exact same documents, so we think the Court could

21   rather easily exercise supplemental jurisdiction.  There's also

22   an argument that the side agreement was incorporated by

23   reference into the main agreement so --

24          THE COURT:  I'm aware of that reference, but

25   it's -- it bears looking at.  I'll just leave it that way.

1          Yes.

2          LAW CLERK NUTT:  March is not good.  And then how

3    long?

4          THE COURT:  What's that?

5          LAW CLERK NUTT:  How long?

6          THE COURT:  Well, your evidentiary hearing's going to

7    take, what, a day or two?

8          MR. MILLER:  I would think so, Your Honor.

9          THE COURT:  We'll book it for two.

10          MR. MILLER:  That's probably safest.

11          THE COURT:  Well, March isn't so good.

12          LAW CLERK NUTT:  Or Judge Gritzner doesn't --

13          THE COURT:  Just in case we can do it in February, see

14    if he has two days available in February.

15          MR. MILLER:  Your Honor, respectfully, I have got two

16    trials scheduled in February.  It's going to be very difficult

17    for me to do something in February, but --

18          THE COURT:  All right.

19          MR. MILLER:  -- I understand.

20          Your Honor, is there -- should the parties consent to

21    your jurisdiction?  Is there anything to prevent you or your

22    successor to get involved or --

23          THE COURT:  Well, you can consent, if that's what you

24    want to do, and we could schedule it.  I -- I am retiring in

25    February, but I'm going to be on what's called recall status, so

1    I'll still be handling part of the docket, so I'd probably keep

2    it if you consent, but that's entirely up to all of you.  You

3    don't have to do that.

4              LAW CLERK NUTT:  The suggestion is that they contact

5    Judge Gritzner's chambers for late March, April time.

6              THE COURT:  All right.

7              LAW CLERK NUTT:  (Inaudible.)

8              THE COURT:  All right.  I'm not used to this IM stuff,

9    but apparently we're being told that you can contact Judge

10   Gritzner's chambers for a late March, early April time frame for

11   two days, though I don't -- Kathy, that's what they'd be asking

12   for is two days in late March, early April.

13             LAW CLERK NUTT:  Right.

14             MR. MILLER:  Your Honor, if we --

15             THE COURT:  Because even if they went -- does he want

16   them to contact him?

17             LAW CLERK NUTT:  Well, that's a suggestion.

18             THE COURT:  All right.

19             LAW CLERK NUTT:  He's in trial right now, so I'm

20   not --

21             THE COURT:  Oh, that's right.  He's in trial, right.

22   Okay.

23             LAW CLERK NUTT:  -- directly with him.

24             THE COURT:  Yes.

25             MR. LANGEL:  And, Your Honor, I do have -- this is

1   Todd -- I do have an arbitration hearing scheduled for the last

2   week of March, so that would be an issue for me --

3           THE COURT:  Well --

4           MR. LANGEL:  -- if it was within that week.  Early

5   April is better for me, but --

6           MR. NEIHAUS:  If the parties consented to Your Honor's

7   jurisdiction, when would Your Honor be able to schedule a

8   hearing?

9           THE COURT:  Well, I will -- we'll look.

10          LAW CLERK NUTT:  Well, here.  I'll just let you look

11  at that.  March is not good for (inaudible).

12          THE COURT:  Is this -- is this really going to go?

13          LAW CLERK NUTT:  Potential.  This one --

14          THE COURT:  This is a non-jury?

15          LAW CLERK NUTT:  This one has an issue, yeah.

16          THE COURT:  Okay.  We could do it maybe -- if it goes

17  it probably won't take three days, will it?  Maybe we could.

18          Counsel, how about -- well, I -- I have trials

19  scheduled in March, but you know how they go, they tend to drop

20  out.  But there is -- with some confidence, I would be available

21  Wednesday, the 11th, for two days, because whatever I have then

22  will probably disappear or shorten.

23          LAW CLERK NUTT:  For Judge Gritzner, the 14th and 15th

24  of April are looking good.

25          THE COURT:  So how are you on that April date, the two

1   of you or two sides, everybody?

2          MR. NEIHAUS:  Again, Your Honor, we're concerned about

3   waiting that long for a hearing because of the bonobos'

4   condition and the financial condition of ACCI.

5          You know, under both the settlement agreement and the

6   side agreement, IPLS, ACCI's predecessor entity, was supposed to

7   let us know when they were having financial trouble, could no

8   longer support the bonobos, and instead of letting us know --

9   and they were supposed to let the Court know, and instead of

10  doing that they simply formed a new organization, purported to

11  transfer title to the bonobos, kept us in the dark about it.  In

12  fact, even after ACCI had been formed and the bonobos has been

13  transferred, they keep -- they kept speaking to us about IPLS,

14  the predecessor entity, even though that was no longer the name

15  that they were officially going under.

16         So we don't have confidence that if there's a problem

17  this winter we'll know about it, which is why we want to hasten

18  the proceeding.  The March date, if Your Honor would consider

19  it, would be our preference.

20         THE COURT:  Well, I'm available that -- during that

21  time frame and -- but it's up to you as to whether or not you

22  want to consent, if you want to talk with Judge Gritzner's

23  chambers.

24         Aha.  We're moving as we speak.  He might be able to

25  do it as early as late February, but I don't have the date from

1  him, though.

2          Can you get your depositions done fairly quickly?

3  You've got to do some briefing too, you know.

4          MR. MILLER:  Your Honor, my problem is I'm scheduled

5  for a trial in front of Judge Strand on February 23rd in the

6  Northern District, so --

7          THE COURT:  Okay.  Likely to go, you think?

8          MR. MILLER:  It is likely to go, unfortunately.  Well,

9  fortunately, but --

10          MR. NEIHAUS:  Your Honor, if the date gets pushed back

11  too far, especially through the winter, would it be possible to

12  ask for some assurances from ACCI that they have the financial

13  ability to support the bonobos, that they have procedures in

14  case of an emergency, that they'll let us know in cases of

15  emergency?  Would it be possible to establish that?

16          THE COURT:  Any problem with that?

17          MR. MILLER:  Your Honor, I've obviously been sitting

18  here silent while Mr. Neihaus has been teeing off of my client,

19  and I have to say that everything he said is not a concern, and

20  that's been expressed to Mr. Zifchak, with a copy to

21  Mr. Neihaus, on these very issues in the past couple weeks.  And

22  we're happy to provide assurance with respect to the safety and

23  well-being of the bonobos.  I don't know whatever we tell them

24  is going to satisfy them.

25          And, frankly, if Ms. -- if Dr. Rumbaugh and BHI want

1 to help contribute to that safety, we're all ears for a donation

2 or whatever they'd like to do.  They continue to come forward

3 with claims about this, you know, that there's all these

4 problems, and we've responded to all of them.  And the purported

5 electricity issue and the like is all explainable.  In fact,

6 Dr. Rumbaugh was part of this IPLS issue that they're claiming

7 was some sort of an in the midst of the night changeover.

8         So, you know, I -- I don't want to go too far in

9 saying, you know, we're going to all hold hands and go forward,

10 but if there's some sort of concern about the well-being of the

11 bonobos, we've addressed it, and if there's something specific

12 they want us to address further, we'll continue to do that.  And

13 if there needs to be a report that the heat's on weekly, I've

14 already offered that, I believe, and if I haven't, I am now.

15         MR. NEIHAUS:  Again, respectfully, Your Honor, last

16 time there were problems at the facility, we didn't know about

17 it.  IPLS simply formed a new entity, purported to transfer

18 title, and which led us to being in court today.  If ACCI would

19 put something on the record, that, perhaps, would give us a

20 little more comfort about the --

21         THE COURT:  Well, they --

22         MR. NEIHAUS:  -- position of the facility or the

23 bonobos.

24         THE COURT:  -- volunteered to provide some sort of

25 weekly report about --

1        MR. MILLER:  What do you want on the record?

2        THE COURT:  What's that?

3        MR. MILLER:  I don't know what they would want on the

4   record.  I mean, that's --

5        THE COURT:  What --

6        MR. MILLER:  I'm open to it.

7        THE COURT:  What assurance would you like on the

8   record, Mr. Neihaus?

9        MR. NEIHAUS:  The amount of funds that ACCI has

10  available, its emergency procedures.  We'd like to know who is

11  at the facility and when; assurances that the heat will be kept

12  on and, if it fails, that there's procedures to address it;

13  assurances that there's funds to pay the electric bill;

14  assurances that the bonobos will receive proper veterinary care

15  and that there's funds available for that.

16        THE COURT:  Well, that's quite a mouthful to do right

17  here in the courtroom.

18        MR. MILLER:  And respectfully, Your Honor, one problem

19  here is it's all in the eye of the beholder.  We have told them

20  over the course of the past several weeks when we've been

21  talking about these issues -- the current staffing, the

22  situation with the electrical and the heat, issues with respect

23  to funding -- you know, they've got claims of all sorts that the

24  funding's a problem, but we see no funding or assistance from

25  them, despite the claim that they have similar or same or

1   shared, whatever the standard is, ownership.

2          So, you know, I mean, I can try to continue to provide

3   this information, but we feel like it's been provided, and if

4   there's some legitimate claim or concern notwithstanding this

5   information provided, bring it back to me.  Let me understand

6   it.

7          THE COURT:  Well, I don't think we're getting very far

8   trying to hash this out on the record right now.  Here's what

9   we're going to do.  We're going to get a -- I'm going to do my

10  best to get the earliest possible two-day evidentiary hearing

11  date before Judge Gritzner.  In the meantime, if you -- and it's

12  entirely up to you, if you want to consent to a magistrate judge

13  jurisdiction, I -- as I say, I think I can set it during the

14  middle of the week of March the 11th for a two-day period.

15         But that's entirely up to you as to whether you want

16  to do that.  You two talk and decide if that's what you want to

17  do.  If that's what you want to do, we'll book it then.  If not,

18  I'm going to work with Judge Gritzner's chambers.

19         Then backing up from there, can't get much done before

20  the end of the year, but we're going to -- regardless of when we

21  set this, you're going to be taking your depositions during the

22  month of January?  Is that reasonable?

23         MR. NEIHAUS:  Yes, Your Honor.

24         MR. MILLER:  Seems so, Your Honor.

25         THE COURT:  All right.  Now, I'm going to limit it

1  to -- not knowing for sure, but two per side.  I know you each

2  want one, but sometimes depositions beget depositions.  So two

3  per side, fair enough?

4          MR. MILLER:  Fair enough.

5          THE COURT:  To occur in January.

6          Now, even though I'm not going to stage it and hold

7  everything in abeyance pending a jurisdictional ruling, I think

8  we ought to get the briefing in on legal issues, which would

9  include the summary -- the jurisdictional issue, and get that

10  in -- oh, that's going to -- we're going to have to get that at

11  least by mid-February so the Court can get well ahead on that.

12          So I'm going to -- this ought to give you time to get

13  your -- to the extent you want to deal with facts, but we're

14  really going to need some briefing from you particularly on that

15  jurisdiction issue, and let's have that by, oh, say February the

16  16th, prehearing briefs.

17          I will set a sort of a -- what I'd call a mini final

18  pretrial conference, and the date that I set that will depend

19  upon the hearing date.  That -- in any event, that will be

20  before me, and I'll set that, and what we will want at that

21  time -- you will have already given us your briefs, but we would

22  very much like a list of witnesses and exhibits, and we will

23  want you to do your witnesses in the form we usually do for

24  trials, and that is we'd like you to categorize them, Categories

25  A, B and C.

1          Mr. Neihaus, Mr. Langel can help you with this, but if

2    it's Category A, it comes in right from the beginning, you don't

3    have to fuss around with offering it; Category B and C, reserve

4    objections to foundation or reserve all objections, but at least

5    state your objections to -- to each other.

6          So we'll look for a witness and exhibit list, we'll

7    get together for a little final pretrial conference, make sure

8    we're all on the same page there.  And what all we're lacking

9    right now is a hearing date.

10          Now, once we get that date lined up, does that -- are

11    you able to live with that process to get it all ready to go,

12    Mr. Neihaus?

13          MR. NEIHAUS:  That sounds good to me, Your Honor.

14          THE COURT:  Mr. Miller?

15          MR. MILLER:  We will, Your Honor.

16          THE COURT:  That's what we'll do, then.

17          MR. LANGEL:  And should the parties agree to a

18    specific date to exchange witness and exhibit lists in advance

19    of the pretrial?

20          THE COURT:  Yes, I think you should.  We -- that's

21    part of the normal pretrial process.  When do you think you'd be

22    able to do that?

23          MR. LANGEL:  Again, it depends on the date of the

24    hearing, but I would propose, what, a week or ten days?

25          MR. MILLER:  I was going to say a week before.  That's

1   fine.

2           MR. LANGEL:  A week before.

3           THE COURT:  Okay.  Well, you're going to be in our --

4   at our little final pretrial conference.  By the time I set

5   that, we'll be exchanging witness and exhibit lists, so I'll

6   build that into it, okay?  Final pretrial, I'm calling it the

7   final pretrial conference, will be about a week or ten days

8   before our hearing, and we can do that by phone, if that's okay.

9           Mr. Lederer, I don't know the extent to which you're

10  going to be participating in all of this, but do you have any

11  issues with any of that?

12          MR. LEDERER:  Well, my client just doesn't want to

13  spend any more money on this --

14          THE COURT:  You --

15          MR. LEDERER:  -- and that was why they -- that's why

16  they agreed to the settlement in the first place.

17          THE COURT:  As --

18          MR. LEDERER:  And nobody has said the reason that the

19  settlement's not being performed is because of something my

20  client did or didn't do, so I'd really like to -- I mean, I'm

21  not charging my client for this phone call, and I really don't

22  want to spend more -- more time on it, but I want to do what

23  I -- what I owe to the Court with respect to my professional

24  obligations as counsel of record for a party in a case that's

25  still going on.

1       THE COURT:  Your client's toehold in this case is so

2  slight and the interest more theoretical than real, as far as

3  I'm concerned, you don't have to file a brief, you don't have to

4  participate in the hearing.  It might be helpful from your

5  client's standpoint and the Court's standpoint to file a

6  prehearing statement as to your client's position in the matter,

7  but as far as I'm concerned, they would not have to participate

8  in a hearing.  All that is up to them.

9       MR. LEDERER:  Thank you, Judge.

10       THE COURT:  And you participate to the extent that

11  you -- that you wish to, and I'm not going to --

12       MR. LEDERER:  Thank you.

13       THE COURT:  I'm not going to --

14       MR. LEDERER:  I appreciate the clarification.  Thank

15  you very much.

16       THE COURT:  Right.  I'm assuming you'll present no

17  evidence.  We won't look for a witness or exhibit list from you.

18  Unless you tell me otherwise, we won't expect you to participate

19  in the hearing.  In fact, we'll schedule it without further

20  contact with you, although you'll know when it is, obviously.

21  And you don't have to make any prehearing filings, though, as I

22  say, it might help, since you're still nominally in this, to

23  file some statement on behalf of your client as to your client's

24  position in the matter.

25       MR. LEDERER:  I understand, and I appreciate the

1  accommodation, Your Honor.  Thank you very much.

2            THE COURT:  Thank you.

3            Counsel, anything more we can do today, do you think?

4            MR. MILLER:  I don't think so, Your Honor.  This is

5  Bill.

6            MR. NEIHAUS:  No, Your Honor.  Thank you very much.

7            THE COURT:  All right.  Well, I'll get an order out

8  based upon what we've talked about today.

9            Now, you know, you still do have the settlement

10 conference option, if that is of any interest and if you think

11 that would be something that might resolve it.  You don't have

12 to go through that just for the exercise of going through it,

13 but if you think it might be helpful, you still have that option

14 available to you, though you won't if you consent to me; it will

15 be some other magistrate judge that would do it.

16           MR. NEIHAUS:  Thank you, Your Honor.

17           MR. MILLER:  Thank you.

18           THE COURT:  Thank you.  We're in recess.

19           (Conclusion of recording.)

20

21

22

23

24

25

1          C E R T I F I C A T E

2          I, Kelli M. Mulcahy, a Certified Shorthand Reporter of

3  the State of Iowa and Federal Official Court Reporter in and for

4  the United States District Court for the Southern District of

5  Iowa, do hereby certify that the foregoing pages, 1 through 32,

6  represent a true and complete transcript of the captioned

7  hearing which was electronically recorded by the FTR Gold system

8  and later reduced to typewriting by me to the best of my

9  ability.

10          I further certify that the transcript page format is

11  in conformance with the regulations of the Judicial Conference

12  of the United States.

13          Dated at Des Moines, Iowa, this 29th day of December,

14  2014.

15

16

17

18                              /s/ Kelli M. Mulcahy
                              _____
19                              Kelli M. Mulcahy, CSR, RMR, CRR
                              Federal Official Court Reporter
20

21

22

23

24

25