IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| IOWA PRIMATE LEARNING SANCTUARY d/b/a GREAT APE TRUST and APE COGNITION & COMMUNICATION INSTITUTE,<br><br>Plaintiff(s),<br><br>vs.<br><br>ZOOLOGICAL FOUNDATION OF GEORGIA, INC. d/b/a ZOO ATLANTA; DEMOCRATIC REPUBLIC OF CONGO; JAPAN MONKEY CENTRE INSTITUTE AND MUSEUM OF PRIMATOLOGY and SUE SAVAGE-RUMBAUGH, Ph.D.,<br><br>Defendant(s).<br><br>And BONOBO HOPE INITIATIVE, INC.,<br><br>Intervenor Defendant. | 4:10-cv-00052-RAW<br><br>ORDER CONCERNING PLAINTIFFS' RESPONSE TO THE COURT'S RULING OF APRIL 5, 2016 AND RULING ON PLAINTIFFS' MOTION FOR LEAVE TO RESPOND TO FURTHER COMMENT OF DR. SAVAGE-RUMBAUGH AND BONOBO HOPE INITIATIVE |

In its November 2, 2015 ruling [140] (the "November 2 Ruling") on defendant Savage-Rumbaugh's Motion for Specific Performance and Related Relief [69] the Court addressed defendants'[1] claim that plaintiffs (collectively "ACCI") had not met their contractual obligation to "take all reasonable precautions to ensure [the] complete safety" of the bonobo Maisha in the event of a flooding emergency at ACCI's Des Moines sanctuary. (November 2 Ruling [140] at 38-41). Bonobos are a species of great ape with human-like linguistic and cognitive abilities.

---

[1] Bonobo Hope Initiative, Inc. ("BHI") was permitted to intervene as a party-defendant and joined in the motion. The interests of the other defendants in the original interpleader have been resolved. They have not participated in proceedings on the specific performance motion. "Defendants" as used herein refers jointly to Dr. Savage-Rumbaugh and BHI.

The sanctuary experienced severe flooding in 2008. There is a known risk that the nearby Des Moines River will at some point flood again to the extent of reaching the sanctuary buildings where Maisha and four other bonobos (the "Bonobo 4")[2] are housed. During the hearing on the specific performance motion ACCI's representatives referred to the existence of a disaster plan which addressed the risk of flooding. The plan was not in the record nor were its contents described. This left the Court unable to evaluate if the plan adequately ensured the safety of Maisha. (November 2 Ruling [140] at 39-40). The Court granted the specific performance motion to the extent of requiring ACCI to produce "all disaster or other plans in place to protect the bonobo colony from flood disaster." (*Id.* at 41).

ACCI complied by producing its "Flood Response Protocol" [142]. Defendants provided comments and criticisms of the protocol together with a counter proposal for a "Flood Contingency Protocol." (Def. Comments [147, 147-1]). The Court had its own questions. Following conference with the parties, ACCI was directed to respond to a series of questions and concerns which incorporated some of the issues raised by defendants. (1/13/16 Order [153] at 2-3).

ACCI responded as directed [153,154]. Defendants made further comments and provided additional material [155]. The Court addressed the sufficiency of ACCI's protocol in connection with the April 5, 2016 ruling on defendants' then pending Motion to Reconsider and to Alter or Amend the November 2 Ruling [157] (the "April 5 Ruling"). The Court declined to adopt the protocol in defendants' counter proposal, noting the Court would consider imposing an alternative

---

[2] In the November 2 Ruling the Court held it had jurisdiction to enforce the settlement agreement with respect to Maisha, but not a separate supplemental settlement agreement which pertained to the Bonobo 4. (November 2 Ruling [140] at 17). The Bonobo 4 were not part of the underlying interpleader action.

proposal "only if convinced ACCI was unable or unwilling to perform as required by the contract." (Id. at 19).

ACCI's protocol (1) provided ACCI would monitor the Weather Wire Service of the National Oceanic and Atmospheric Administration ("NOAA") for flood alerts, watches and warnings; (2) described the decision-making process for evacuation of the bonobos; (3) stated that the bonobos would be temporarily evacuated to Des Moines' Blank Park Zoo under an oral agreement with the zoo and that ACCI and the zoo were in discussions on a written Memorandum of Understanding ("MOU");[3] and (4) contained a "contingency plan" to protect the bonobos in place at the sanctuary if flood waters threatened the sanctuary buildings before the bonobos could be safely evacuated. (ACCI Protocol [142-1 at 2-3]). The Court had several concerns about the protocol, chief among them the lack of a firm agreement for temporary placement at the zoo, but said:

> The Court's concerns can be addressed if ACCI's protocol is amended in three ways. First, it should be amended to reflect a reliable plan for the bonobos to be evacuated on an emergency basis to the zoo or other suitable facility willing to receive them, in short, that they have a place to go to. The anticipated MOU with the zoo on this subject should be produced to the Court and movants. Second, as contemplated in ACCI's answer to the Court's inquiry (*see* ACCI Resp. to Order [154] at 5), the protocol should clearly provide for a rapid evacuation decision and clarify the decision-making process. Finally, as ACCI has said it would do, the protocol should provide that in the event an evacuation decision is made ACCI will provide immediate notification of the decision to a designated representative of BHI and the circumstances which caused it. (*Id.* at 6).

---

[3] As a fallback option, if the zoo was not immediately available to receive the bonobos, the bonobos would be maintained in a hangar at the Des Moines International Airport. There was no agreement with the airport to do so. The airport is not a viable option and it has been dropped from ACCI's amended protocol.

(April 5 Ruling [157] at 19-20). ACCI was given 90 days to file an Amended Flood Response Protocol, together with any MOU with the zoo concerning temporary placement of the bonobos. (*Id*. at 20).

On July 5, 2016 ACCI filed an "Amended Flood Response Protocol" and a written "Memorandum Of Agreement" between ACCI and the Blank Park Zoo Foundation (Pl. Resp. to Order, Exs. 1, 3 [163-1, 163-2]).

The principal changes made in the amended protocol are these. In addition to the NOAA wire service, ACCI staff and the primatologists who superintend the facility, Drs. Hopkins and Taglialatela, will also monitor the Iowa Flood Information System ("IFIS") (a source suggested by defendants) on a weekly basis, daily if IFIS indicates potential flooding, and hourly if flood stage is reached. An evacuation alert process is put in place the stated goal of which is to permit evacuation of the bonobos before flooding becomes a direct threat. Drs. Hopkins and Taglialatela and the sanctuary's attending veterinarian ("AV"), Dr. Julie Gilmore (or the on-call AV) are given responsibility for making an evacuation decision. One of them is to be available at all times to make such a decision with the AV having the final say in determining whether evacuation is in the best interest of the bonobos. Immediate notification of an evacuation decision is to be given to BHI.

In the event of an evacuation, the bonobos will be taken to the Blank Park Zoo where they will be temporarily housed under the agreement with the zoo. The amended protocol clarifies that the contingency plan to protect the bonobos in place at the sanctuary is "an absolute last resort." (Pl. Resp. to Order, Ex. 2 (redlined amended protocol) [163-2] at 2-5).

The written agreement between ACCI and the zoo imposes reciprocal obligations. The zoo agrees to provide temporary housing to ACCI's bonobos in the event of threatened flood or natural

4

disaster, and ACCI agrees to provide the same for zoo animals threatened by natural disaster (flooding is not an issue for the zoo). (Mem. of Agreement [163-3] at 2).[4] The zoo agrees to provide "safe, temporary housing" for the bonobos. (*Id*. at 5). ACCI is responsible for transporting the bonobos and providing for their care while at the zoo, to include food, nourishment, and medical care. The zoo agrees to provide access to zoo facilities for these purposes. (Id. at 4-5). While the bonobos are at the zoo, ACCI may proceed with ongoing research to the extent possible and reasonable, and the parties agree to take reasonable precautions to minimize stress to the bonobos. (*Id*. at 5). The agreement anticipates the need for temporary housing will be less than 90 days. If temporary housing beyond that period is required, the parties agree to assess the circumstances and in good faith negotiate a longer period. (*Id*. at 3).

The amended protocol and the agreement with the zoo satisfy the Court's concerns set forth in the April 5 ruling. Together they amount to "a reliable plan for the bonobos to be evacuated on an emergency basis to the zoo . . . they have a place to go to." (April 5 Ruling [157] at 19). The amended protocol both provides for a rapid evacuation decision and clarifies the decision making process. It requires ACCI to immediately notify a designated BHI representative of an evacuation decision and the circumstances which caused the decision.

In their comments [169] on the amended protocol and agreement with the zoo, defendants make many of the same arguments, criticisms, and requests made previously in commenting on the original protocol and ACCI's responses to the Court's inquiries. The Court will not revisit what has already been presented and considered beyond what follows.

As an alternative to rejecting ACCI's protocol and adopting their counter proposal, defendants ask the Court to conduct further proceedings on the flood danger issue, to include

---

[4] The ACCI sanctuary has an empty building which could house some zoo animals.

5

requiring disclosure of ACCI's correspondence with the zoo, allowing additional discovery, and directing representatives of the Iowa Flood Center to make an on-site study of flooding potential at the facility. If this request is taken as a motion to reopen the record, it is denied. No compelling reason is put forward to continue proceedings in this Court, now long after the ruling on the motion for specific performance, or to further delay the pending appeal which has been held in abeyance. Defendants had a full opportunity to develop the flood danger issue over the course of the three day evidentiary hearing in May 2015. As to discovery, in the prehearing scheduling process the parties agreed to limit discovery, one deposition each and no document discovery. (*See* 12/23/14 Order [93] at 1-2; Status Conf. Tr. [96] at 7, 14- 16, 27-28). No pre-ruling request was made to expand the scope of discovery. The Court will not do so now.

Defendants also renew their alternative request to appoint a Special Master at ACCI's sole expense to inquire into the flood danger issue. From what the Court can infer from the hearing record, it is unlikely either party has the means to pay the expense of a master. (*See* November 2 Ruling [140] at 42). Also, at this late stage unreasonable delay is probable. *See* Fed. R. Civ. P. 53(a)(3). More fundamentally, the issue concerns enforcement or breach of a contract for which the services of a master are simply unnecessary.

As a final alternative, defendants ask the Court to order ACCI to promptly meet and confer with BHI "until a mutually agreeable flood protocol has been accomplished." (Def. Further Comment [169] at 6). If only that were possible. Unfortunately, the Court's firm impression is that the parties remain at loggerheads. Positions have only hardened. It takes more optimism than the Court can muster to believe the parties could mutually agree on a flood protocol. If the Court were to order them to make the effort the eventual probable result would be separate proposals not much different than those already before the Court, and needless delay.

Attached to defendants' further comments is an affidavit of Dr. Savage-Rumbaugh, and her sister and BHI board member, Elizabeth Pugh, who also has a long history with the bonobos. Dr. Savage-Rumbaugh is critical of the amended protocol because it lacks an objective standard to trigger an evacuation. She does not have confidence in Dr. Gilmore as an evacuation decision maker, and doubts Dr. Gilmore would give BHI the required immediate notification of an evacuation decision. Dr. Savage-Rumbaugh believes BHI should be involved in the evacuation decision as well as the process of caging and transporting the bonobos to the zoo. She is concerned about anesthetizing the bonobos to get them in to the transport cages, and believes with training they could be coaxed to walk into the cages. (Savage-Rumbaugh Aff. [169-1] at 2-6).

Concerning the agreement with the zoo, Dr. Savage-Rumbaugh objects to the reciprocal nature of the agreement. She questions the lack of detail about under what circumstances zoo animals would be evacuated to the ACCI sanctuary, and the suitability of the empty building (the Orangutan building) to receive them. She has questions about the zoo's preparations to receive the bonobos. (Savage-Rumbaugh Aff. [169-1] at 7-12).

It is important to return to the limited scope of the issue remaining before the Court. The Court is asked to enforce a Settlement Agreement which vests ownership of Maisha, the surviving bonobo to which it applies, in IPLS (now ACCI), and under which ACCI has the duty and responsibility to take reasonable precautions to ensure Maisha's safety. Planning for the known risk of flooding is part of this duty. What the plan entails is up to ACCI. The question is whether the plan put in place by ACCI is so deficient as to be in breach of its contractual duty of care and safety, not whether the plan could be improved or be more detailed. The Court's core concern has been that in the event of a repeat of a flood like that in 2008 a reliable process be in place to temporarily evacuate the bonobo colony of which Maisha is a part to a place of safety before the

flood waters reach the sanctuary buildings, a place where the bonobos will be appropriately cared for until the danger passes. The amended protocol and agreement with the zoo does this. Together they form a flood response plan that, if not perfect, is much more definitive and comprehensive than anything the sanctuary has had before, including during the time when Dr. Savage-Rumbaugh was in charge.

There are many disputes between the parties about how to best care for the bonobos and how the research into their unique capabilities should be conducted. Despite their differences and mutual distrust, the Court has never doubted the good faith, competence, and genuine concern of both sides in respect to the bonobos. The sanctuary exists only because of the bonobos and the research potential they afford. Their proper care and safety are essential to the survival of the sanctuary. This fact gives reasonable assurance that ACCI will employ the amended protocol and agreement with the zoo to protect Maisha and the other bonobos if flood water again threatens the sanctuary.

In view of the foregoing, the Court finds ACCI is not in breach of the Care and Safety provision in the Settlement Agreement (*See* Hearing Ex. 1 at 2) for failing to make adequate provision for the care and safety of Maisha in the event of a flood emergency. Plaintiffs' Motion for Leave to Respond to Further Comment of Dr. Savage-Rumbaugh and Bonobo Hope Initiative [170] is **denied.** With this Order and Ruling all issues have been determined concerning Dr. Savage-Rumbaugh's Motion for Specific Performance and Related Relief, joined by BHI. Proceedings in this Court on the motion are closed.

IT IS SO ORDERED.

Dated this 14th day of September, 2016.

                                                   ROSS A. WALTERS  
                                                   UNITED STATES MAGISTRATE JUDGE